## STATE VS. PRESTON.

OBSTRUCTION OF HIGHWAY: (1–3) *What constitutes a " willful " obstruction.* (4) *Evidence as to existence of highway.* (5) *Plea of " no highway,"* *how waived in justice's court.* (6) *Such plea may afterwards be tried in* *the circuit court, on appeal.*

1. " Wilfully " sometimes means little more than " intentionally ; " but in penal statutes and criminal law it usually conveys the further idea that the act was done wrongfully, in bad faith, with evil intent or legal malice, or without reasonable ground for believing it lawful.

2. The willful obstruction of a highway, for which a penalty is provided by section 101, ch. 19, R. S., does not include the case of an obstruction created in good faith by the land owner, believing that no highway exists at the place, and acting under the advice and direction of the town supervisors, who are charged by law with the general direction and control of highways in the town. *State v. Hartfiel* 24 Wis., 60.
   [LYON, J., dissenting in part, is of opinion that the judgment and advice of the town supervisors as to the legal existence of the highway in question, would not affect defendant's liability for an obstruction thereof.]

3. It makes no difference in the interpretation of the statute, that the penalty is to be recovered by *civil action,* and not by information or indictment.

4. A witness for plaintiff in such a case testified that an overseer of highways in the district had authorized him to work upon the road in

question over defendant's land, and that he had done so. This being evidence of a claim of right on the part of the public, and that its user of the land was adverse to the owner, defendant should have been permitted to inquire of the witness the circumstances under which such direction was given, to rebut the inference of any such claim.

5. In an action in justice's court for obstructing a highway, where defendant answers in writing denying the highway and claiming title in fee and sole right of possession of the *locus in quo*, he still waives this defense if he fails to give the *bond* required by the statute, and have the cause removed to the circuit court.

6. But on appeal from a justice's court, the circuit court may permit the pleadings to be amended so as to present issues which could not have been tried before the justice (*Dressler v. Davis*, 12 Wis., 58; *Felt v. Felt*, 19 id., 193); and in the case stated in the previous proposition, it might try the question of highway, and no amendment of the pleadings would be necessary for the purpose.

APPEAL from the Circuit Court for *Jefferson* County.

Action commenced in a justice's court, under sec. 101, ch. 19, R. S., for the obstruction of an alleged highway, in the town of Koshkonong. The answer was (1.) A general denial. (2.) That the *locus* was *not a highway*, but was the property of defendant, not burdened with any public or private easement. (3.) That this action was not brought by any person authorized by law to bring it. Defendant did not have the action removed to the circuit court on the ground that the title to land was involved therein, nor did he give the bond required by the statute for that purpose. Judgment having been rendered against him by the justice, he appealed to the circuit court. When the cause came on for trial in that court, the defendant moved to dismiss it because it was not prosecuted by the chairman of the board of supervisors of the town of Koshkonong, nor by his authority, nor with his consent; but the motion was denied. One of the witnesses for the state, Daniel Damuth, Jr., testified, on his cross examination, that he "instituted these proceedings." The printed case does not show that there was any evidence as to whether said Daniel Damuth, Jr., was or was not chairman of the board of supervisors of said town

when the proceedings were commenced. Before the cause was submitted to the jury, the defendant asked the court to give the following instruction, which was refused : " If you find that this action was commenced and is being prosecuted by Daniel Damuth, and that said Damuth is not, and was not at the commencement of this action, the chairman of the supervisors of the town of Koshkonong, and that he commenced and is prosecuting the action without the consent of the chairman of said town supervisors, you will find for the defendant."

The evidence for the state tended to show that a public road, known as the " Janesville road," runs along the east line of sections 17 and 20 in said town of Koshkonong; that for over twenty years a road two rods wide had existed, running westward about 100 rods from said Janesville road, along the section line betwen sections 17 and 20, to a point known as " Britton's Corners ; " that it was fenced off by the owner of the land on each side, some of the fences having existed for over twenty and others for about ten years; that the road had never been obstructed between said two sections for over twenty years, until defendant set fence posts along the section line for a distance of thirty rods, which was the obstruction complained of; that for many years, and until 1868, there was a lane or road running from the western end of the piece of land already described (or from the nortwestern corner of section 20 and the southwestern corner of section 17), along the line between sections 18 and 19, for a distance of about a hundred rods, to a marsh about a mile and a half wide, extending between the waters of Lake Koshkonong and the "meandered line " of said lake ; that this lane or road was more or less obstructed by bars, gates, etc., at various times, and finally closed up in 1868 ; that there had been during a period of over twenty years a good deal of travel over the road here in question, between sections 17 and 20, and thence along said lane or road between sections 18 and 19, or (after that was closed) over the adjoining lands, especially for the purpose of drawing hay from

the marsh, driving cattle to it, or reaching the persons who resided on said road, or near Lake Koshkonong; and that "the Damuths" had lived on section 18 over twenty years, and had "no other road out" than the one which defendant had obstructed. Daniel Damuth, Jr., testified also that labor had been performed on this road by direction of the overseers; that he had worked there himself under such direction — the last time only a few years before the trial of this action; that he had "worked on that road under three different pathmasters; that he could not recollect exactly how long ago, but the last time was two years ago;" that he "knew of three or four other people working on that road under the direction of the overseers — scraping and drawing dirt and cutting grubs;" that besides himself, his father, one Marcellus Finch and one Nichols had also worked there; that Charles Finch, Beemer and Sheldon Damuth were the overseers who told witness to work on that road. Daniel Damuth, Sr., testified that he had "worked on that road by direction of the pathmaster twice;" and that "Daniel Sowles and Ambrose Hall ordered him to do work there." Charles B. Finch testified: "This road is fenced out two rods wide from the Janesville road to the corner of section 18, and has been for eighteen or twenty years. * * Labor has been performed on this road by order of the overseers of the town. Plowing was done, and dirt filled into the hollows, eighteen years ago. Work was done on that road three or four times. * * I was overseer in 1867, and ordered work done on that road." On cross examination he said: "I did not order work done on this road as overseer to enable me to get hay from the marsh. * * Daniel Damuth, Jr., did the work. I did not allow him to work there simply because he wanted to. It was customary for the neighbors that lived there to work on the roads in the district. * * I ordered Damuth to do work on that road in 1867. No one else except myself, worked on it that season. * * A portion of the work done on this road was where the posts [set by de-

fendant] are; and a portion east of the posts, on section 20."
This witness resided on the northeast quarter of section 20,
having the road here in question for his northern boundary.

The testimony for defendant tended to show that the lane on
the section line between sections 18 and 19 (running westward
from the western end of the piece of road here in dispute) was
a mere private road or alley, kept closed during most of the
time by a fence and bars or gate, which people of the neigh-
borhood were permitted to use in order to reach the marsh for
cutting and drawing hay, or driving cattle, but which was
never used by the general public, nor regarded as a public
highway.   The evidence offered by defendant, and rejected by
the court, in reference to the action of the board of supervisors
of the town of Koshkonong in 1871, upon an application made
to them "to take up the road in question, if it was a road,"
will sufficiently appear from the opinion.   One Beemer, for the
defense, was asked the following questions successively: "Dan-
iel Damuth, Jr., has testified that you authorized him to
expend highway labor, when you were overseer of highways,
on these premises claimed here to be a road.   Why did you do
that?"   "What were the circumstances of your directing, as
overseer, Daniel Damuth, Jr., to expend highway labor on the
road?"   "Did you as overseer direct Daniel Damuth, Jr., to
expend labor upon the premises in question, or permit him to
do so at his request."   The witness was not permitted to an-
swer any one of these questions.

Besides the instruction above recited, the defendant asked,
and the court refused, the following:   "If the premises, at the
time defendant set the fence posts thereon, had been used by
the general public continuously and uninterruptedly for ten
years or more, but such use was a matter of permission on the
part of the owners of the land, then said premises could not
have become a public highway by such ten years use."

· The jury found for the plaintiff, assessing the sum to be

paid by defendant at one dollar; and, a new trial being denied, defendant appealed from a judgment on the verdict.

*Geo. W. Burchard*, with *Geo. W. Bird*, of counsel, for appellant:

1. Sec. 9, ch. 155, R. S., imposes upon the chairman of the town board of supervisors the duty of prosecuting suits for the recovery of any penalty or forfeiture incurred within his town, which is recoverable by action before a justice of the peace, and thereby prohibits other officers and citizens from institu-ting these proceedings. *State ex rel. v. Hastings*, 10 Wis., 525. The contrary view intimated in *Carter v. Dow*, 16 Wis., 298, seems to have been merely *obiter dictum*.    2. A new trial should have been granted· because the verdict was contrary to law and the evidence.    (1.) The evidence shows that the strip of land in question was not and could not be used as a public highway for the reason that it did not lead from one public place to another.    One could not use it for the purpose of getting to any place public or private without getting off from it, and so committing a trespass.    "A public highway is ground over which the public pass and repass for the ordinary purposes of travel." *Barker v. Clark*, 4 N. H., 383; *Onstott v. Murray*, 22 Iowa, 457.    It was urged that the so called high-way extended west from the northwest corner of section 20 down to the meandered land, and that in contemplation of law the lake and river extended back to the meander line, and hence this *locus* was not a *cul de sac*.    But this is an error both of fact and law.    The lane west of section 20 was always fenced across, and navigable waters no *not* reach back to the meandered lines.    *Jones v. Pettibone*, 2 Wis., 308; *Walker v. Shepherdson*, 4 id., 511; *Bainbridge v. Sherlock*, 7 Am. Law Reg., N. S., 720; *Gould v. Hudson River R. R. Co.*, 6 N. Y., 522; *Steamer Magnolia v. Marshall*, 39 Miss., 109 (6 Am. Law Reg., N. S., 510); *Ensminger v. The People*, 47 Ill., 384 (9 Am. Law Reg., N. S., 128); Angell on Highways, secs. 72, 74, 75;

Angell on W. C., 743. (2.) The evidence does not show any *dedication* of the land to the public as a highway, but merely that it was left open for the private use of the parties owning on each side. 3. The court erred in excluding the questions put to Beemer by which it was sought to explain and contradict the statements of plaintiff's witnesses. It erred also in excluding the evidence offered as to the action of the town supervisors in 1871. If the decision of these officers is not conclusive, it was competent to rebut any presumptions as to an official acceptance of this land as a highway by reason of the unauthorized and illegal acts of the overseers in directing or permitting the expenditure of highway labor thereon. *Miller v. Garlock*, 8 Barb., 153. And certainly it would go far to disprove any *willful* obstruction. 4. The instruction refused in reference to a ten years user brings up again the question discussed in *Hanson v. Taylor*, 23 Wis., 547. The *user* from which a perpetual easement is to be derived should be one which is public and general, a user of the land clearly as a public highway, and not merely as a path or lane, and one also which has been *maintained as a matter of right*, and not merely as a favor.

*L. B. Caswell*, for respondent:

1. The motion to dismiss the action because not prosecuted by the chairman of the town supervisors, was properly denied. *Carter v. Dow*, 16 Wis., 298. The district attorney has authority to prosecute these actions. R. S., ch. 155, sec. 12. 2. The issue in this case was made up in the justice's court. No new issue was made in the circuit court, and the trial should be confined to the issues previously made. No bond being filed by defendant, his plea of no title was a nullity and that defense was waived. *Barteau v. Appleton*, 23 Wis., 414; *State v. Huck*, 29 id., 202; 9 Wend., 65; *Randall v. Crandall*, 6 Hill, 342; 7 N. H., 266; 8 id., 353; 1 Met., 309; 1 Greene, 301. There is no way of transmitting to the circuit court by appeal a subject matter of which the justice had no jurisdiction. 3.

The proof establishes without contradiction, that from the Janesville road westward to "Britton's Corners," a road had been kept open, fenced out on each side, used and traveled, without any obstruction whatever, for over twenty years; that it had been worked by and under the direction of five different overseers of highways; that the public succeeded in passing through to the marsh, lake or river; that in 1868 the road west of this from Britton's Corners to the lake, was blocked up; that the first division of the road, however, still remains open, and people travel over it as usual, those passing further down than Britton's Corners turning out, and going across Damuth's lands. The obstruction complained of was placed in the first division of the road (between the Janesville road and Britton's Corners), which the jury have found to be a public highway. 4. The rejection of the evidence of Beemer was not an error injurious to the defendant. (1) The *user*, which was clearly established, was sufficient alone to make the land a highway, by the decisions of this court in *Hanson v. Taylor*, 23 Wis., 547 ; *Buchanan v. Curtis*, 25 id., 99 ; *Scribner v. Blute*, 28 id., 148. Certainly the dedication and user together were sufficient. (2) Conceding that Beemer would have testified, if permitted, that he never authorized Damuth to work upon the road, there were still four others who caused such labor to be expended, and no offer was made to rebut plaintiff's proof on that subject. The rejected evidence would therefore have been immaterial.

DIXON, C. J. This is an action to recover a penalty alleged to have been incurred by the defendant under section 101, ch. 19, R. S. (1 Tay. Stats., 508, § 137), which reads as follows: "Whoever shall *willfully* obstruct any highway, or fill up or place any obstruction in, any ditch constructed for draining the water from any highway, shall forfeit for such offense a sum not exceeding twenty-five dollars; and the overseer of the proper district shall cause such obstruction immediately to be removed."

The principal question to be considered in the case is as to the meaning and effect of the word "willfully" above used, and arises upon an offer of proof made by the defendant on the trial, which was rejected by the court. Having shown by the witness, one of the supervisors, that an application was made to the supervisors to take up the road in question, the defendant then offered to prove by him, " that the supervisors of the town of Koshkonong, in the year 1871, and prior to the alleged act of the defendant in obstructing this road, upon proper application made to them to take up and discontinue the same, upon due notice given, met to decide such application, viewed the premises in question, and determined that there was no highway there, and so informed the defendant, and instructed him to place the fence where he did." The offer was objected to by the plaintiff, and rejected by the court; and exception was taken by the defendant.

The question thus presented might have been considered in other cases which have come before this court, and particularly in *The State v. Hayden*, 32 Wis., 663; but as the point has never been taken, it has not hitherto been considered or decided. It is still an open question, and is now to be determined for the first time.

For the plaintiff it is contended that the term *willfully*, as here used, signifies no more than *voluntarily* or *purposely* — thus distinguishing the act of obstructing made penal, from one which may be said to have been *accidental*, which last alone it was the design of the statute not to punish. The word *willfully*, as used to denote the intent with which an act is done, is undoubtedly susceptible of different shades of meaning or degrees of intensity according to the context and evident purpose of the writer. It is sometimes so modified and reduced as to mean little more than plain *intentionally*, or *designedly*. Such is not, however, its ordinary signification when used in criminal law and penal statutes. It is there most frequently understood, not in so mild a sense, but as conveying the idea of legal malice in greater or less degree, that is, as implying an

evil intent without justifiable excuse. 1 Bishop on Criminal Law, § 421. Thus in *The State v. Abram*, 10 Ala., 928, where the mutilation, by a slave, of any of the members of a white person, when " willfully " committed, was declared by the statute to be mayhem, and so punishable, it was held that a mutilation could not be regarded as *willfully* done, unless under the circumstances it could be considered as having been *wantonly* done, when it would be deemed *willful* within the meaning of the act. The court say " that it was not intended by the term *willful* to exclude those acts only which were purely *accidental*, and without blame of any kind." In *McManus v. The State*, 36 Ala., 285, speaking of the word *willful* as employed in statutory murder, the court say : " *Willful* is not the synonym of voluntary. In truth, they express no idea which is common to both. The former is a word of much greater strength than the latter. Willful, in this connection, denotes ' governed by the will ; without yielding to reason ; obstinate ; stubborn ; perverse ; inflexible.' Voluntary, in this connection, means ' willing ; acting with willingness.' It is the antithesis of involuntary." And see also *Harrison v. The State*, 37 Ala., 154, where the word *willful*, employed in a statute imposing a penalty for the disturbance of religious worship, was understood in a milder sense.

And in *Commonwealth v. Kneeland*, 2 Pick., 206, 220, indictment under the statute against blasphemy, Chief Justice SHAW says : " The statute makes it penal willfully to blaspheme the holy name of God, etc. The word ' willfully,' in the ordinary sense in which it is used 'in statutes, means not merely ' voluntarily,' but with a bad purpose, and in this statute must be construed to imply an intended design to calumniate and disparage the Supreme Being, and to destroy the veneration due to Him."

In *Commonwealth v. Bradford*, 9 Met., 268, where the defendant was indicted on the statute for willfully giving in a vote at an election, knowing himself not to be a qualified voter, it was held that evidence that he had consulted counsel as to his right

to vote, and submitted to them the facts of his case, and was advised by them that he had the right, was admissible in his favor as tending to show that he did not know that he was not a qualified voter.

But the fullest and most satisfactory discussion we have found in any case is in *United States v. Three Railroad Cars*, 1 Abbott's U. S. Rep., 196, which arose in the district court of the United States for the northern district of New York. The question there was as to the proof necessary to authorize a conviction under a penal statute of the United States prescribing a punishment for " willfully " removing an official seal from property which had been sealed up by officers of the customs; and the court decided that it must appear that the party not only intended to remove the seal, but that he had at the time a knowledge of its character. One who removed such a seal in ignorance of its character, and in the honest execution of a supposed duty in the care and transportation of the property, was held not liable to punishment under the statute, for the reason that he could not be deemed to have acted *willfully.* Speaking of the words *knowingly, willfully* and *maliciously*, as used in criminal and penal statutes, the court says : " The first" of these words does not, in common parlance, or in legal construction, necessarily and *per se* imply a wicked purpose or perverse disposition, or indeed any evil or improper motive, intent or feeling ; but the second is ordinarily used in a bad sense to express something of that kind, or to characterize an act done wantonly, or one which a man of reasonable knowledge and ability must know to be contrary to his duty."

Further citations might be made, but the foregoing are enough, we think, to justify the conclusion at which we have arrived, which is, that the evidence offered should have been received for the purpose of showing that the obstruction in question was not willful. Assuming the facts to have been as stated in the offer, it is clear that the defendant was not guilty of the offense charged, and for which a penalty has been assessed against him in this action. The word *willfully*, employed

in the statute to characterize the offense, can not be construed, as counsel for the plaintiff contends, so as to embrace an obstruction erected in the most perfect good faith by the land owner, believing that no highway existed at the place, and acting under the advice and direction of the proper public officers charged by law with the general supervision and control of all the roads and highways in the town. The power of laying out, altering and discontinuing highways has, with one or two exceptions, been conferred exclusively on the supervisors of the respective towns; and when they, acting as a board, either formally or informally, or with or without strict legal authority in the premises, notify the land owner that no highway exists, and that he may lawfully erect his fence, no penalty can be recovered against him for such erection under the statute in question. An obstruction so created can not be regarded as *willful* within the meaning of the statute, even under the mildest construction which can here be put upon that term. It may be unlawful, and so determined in the end, notwithstanding the opinion and advice of the supervisors, for they may be mistaken; but it can not be said to have been erected with that intent or unjustifiable purpose made necessary by the statute to constitute the offense for which a penalty has been imposed.

The question presented is quite clear of those involved in the cases cited by counsel for the plaintiff and arising under statutes of a different kind, like the case of *State v. Hartfiel*, 24 Wis., 60, where the intent with which the act is done constitutes no element of the offense for which the penalty is given or fine imposed. If the statute in question had contained no qualifying words descriptive of the offense and showing that the obstruction must at least have been wantonly created, or in bad faith, or without reasonable ground for the party to suppose that he had the right to erect it, then the position assumed by counsel might have been correct, and the authorities he cites applicable. As it is, we think his position incorrect, and the cases relied upon inapplicable.

Neither do we think that it makes any difference that the

action given to recover the penalty is in form a civil action. The question presented is the same as if it were recoverable by information or indictment, as, by the statute, all penalties for the sum of one hundred dollars or more must be recovered. R. S., ch. 155, sec. 7; 2 Tay. Stats., 1784, § 7.

Nor do we consider the public authorities without a remedy to vindicate the rights of the public and to determine the unlawfulness of the obstruction, in cases where the penalty prescribed by the statute is not recoverable. The overseer of the proper road district may cause the obstruction to be removed as provided by the statute, and thus put the land owner to his action to recover his damages, in which action the rights of the public may be adjudicated, and the unlawfulness of the obstruction, if such be its character, determined against the party erecting it. Many such actions have been instituted, and have come not unfrequently before this court, in which the sole question involved was, whether a lawful highway existed at the time and place of obstruction.

In discussing the question thus presented, which must be conceded to be of some delicacy and importance and not entirely free from embarrassment and difficulty, we have confined ourselves to the facts of the case before us, and to applying them to the statute under which the action is brought. We are convinced, upon those facts being shown to the satisfaction of the jury, that the action cannot be maintained.

Other grounds of error are assigned, but none of them will be considered, save only that the court is of opinion that the question put to the witness Beemer as to the circumstances under which he, as overseer, had directed the witness Daniel Damuth, Jr. to expend highway labor on the road, should have been answered. The witness Damuth, Jr., had testified that Beemer, when overseer of highways in the district, had authorized him, Damuth, Jr., to work upon the road in question, and that he had done so. The circumstances under which such work was directed by the overseer were not immaterial to the issue. The fact of work being done upon a road under author-

ity of the proper officers of the town is strong evidence of a claim of right on the part of the public, and that the user was adverse to the owner of the land. This fact the plaintiff was permitted to give in evidence against the defendant; and when it had done so, the circumstances under which the direction was given or work authorized, were open to explanation on the part of the defendant, for the purpose of showing, if he could, that, although the work was done or the assent of the overseer procured, there was in reality no claim of right in behalf of the public or the officer, and so nothing to make the user adverse or in conflict with the right now asserted by the defendant.

A question of practice of some importance is also raised, which is, whether the defendant was properly permitted to go into evidence, or contest at all the existence of the highway, on the trial in the circuit court. The action was commenced in justice's court; and the defendant, at the time of putting in his answer in writing before the justice, denying the existence of the highway, and averring the *locus in quo* to be his soil and freehold, and in his sole possession, did not enter into the bond required by the statute to pay the judgment which the plaintiff might recover against him in the circuit court, on removal of the cause to that court, and so waived his defense that the premises in question were not a highway. For the purposes of trial in the justice's court, he admitted that the highway existed. *The State v. Huck*, 29 Wis., 202; *Ashbough v. Walter*, 24 id., 466. The cause was tried before the justice, and the plaintiff had judgment; whereupon the defendant appealed to the circuit court, and on the trial in that court, the defendant was allowed to give evidence and controvert the existence of the highway, *without objection on the part of the plaintiff*, in the same manner as if the action had been removed to the circuit court, and there tried in pursuance of the statute requiring the bond. Counsel for the plaintiff now objects that this was irregular, and that the circuit court had no jurisdiction to try the question of title to the land, because that was a question over which the justice, from whose judgment the appeal

was taken, had no jurisdiction. The principle is invoked, that where the inferior court has no jurisdiction, the appellate court acquires none by the appeal. The principle is inapplicable, and the objection of counsel comes too late, being taken in this court for the first time. It is unlike the case where there is an entire want of jurisdiction in the inferior court. The circuit court had jurisdiction of the cause by virtue of the appeal, and could at all events hear and determine such questions as the justice was authorized to try. But, having such jurisdiction, the circuit court could even do more. It could allow an amendment of the pleadings so as to embrace a cause of action beyond the jurisdiction of the justice. This was expressly ruled in *Dressler v. Davis*, 12 Wis., 58, and *Felt v. Felt*, 19 id., 193. If no title to land had been pleaded in the justice's court, the circuit court could have allowed an amendment of the answer, setting it up before trial on the appeal. The power of the circuit court to grant amendments upon such appeals is the same as that possessed by it in actions originally brought before it, and of which it has jurisdiction. Having jurisdiction to try and determine the title to land, the circuit court can direct an amendment in that particular, so as to put such title in issue, although the cause came before it by appeal from a justice's court, where no issue of the kind could have been tried. Possessed of such power of amendment, it was competent for the circuit court, in a case like this, to receive the evidence without an amendment of the pleadings; for no amendment was necessary, and we have seen that there was no want of jurisdiction in the court to try the question.

Lyon, J. I concur in the reversal of the judgment on the sole ground that the witness Beemer should have been permitted to answer the question put to him as to the circumstances under which he had directed Damuth to expend highway labor on the road in question.

But I must dissent from the views of my brethren to the effect that it is competent for the defendant to prove that the super-

visors of his town told him that the *locus in quo* was not a public highway. The proposed testimony is claimed to be competent as tending to prove that the defendant did not obstruct the alleged highway *wilfully.* The law does not make the supervisors a tribunal to adjudicate upon the legality of highways, and any opinion expressed by them, or either of them, as to whether a given *locus in quo* is, or is not, a public highway, is entitled to just as much weight as the opinion of any other equally well informed citizen, and no more. In this case it is fair to assume that the defendant was just as well (and perhaps better) advised of the facts which constituted the road in question a public highway (if it was a public highway), as were the supervisors, and I am quite unable to perceive how the opinion of the supervisors on the legal proposition involved can change the quality of the act of the defendant in placing the obstructions in the road.

I am constrained to believe that the decision of the court on this question has introduced a new principle into the criminal law, one which will tend to prevent any future convictions for offenses in which *willfulness* is an element, when the accused can show that, before he committed the act for which he is prosecuted, some person advised him that such proposed act was not unlawful. I am aware that my brethren do not intend to go to that extent; but such seems to me to be the logic of their decision.

I think that when the defendant obstructed the alleged highway, he acted at his peril. He knew that it had been traveled more or less for several years; he knew that it was claimed to be a public highway by user; and he knew, or might have known, all of the facts of such user; and having placed the obstructions therein with such knowledge or means of knowledge, if the *locus in quo* turns out to be a public highway, he should be held to have obstructed it *wilfully*, notwithstanding the erroneous legal advice given him by the town supervisors.

*By the Court.* — Judgment reversed, and a *venire de novo* awarded.