[No. 2581.]

## A. B. Thomas *v.* The State.

1. COUNTY COURTS—CRIMINAL TERMS.—By an act of 1876 the County Courts were empowered to change the statutory times for holding their terms for criminal business, but this enactment having been omitted from the Revised Codes, the power conferred by it has ceased to exist. Nevertheless, if, while the act of 1876 was in force, a County Court changed the time for its criminal terms, the change was not abrogated by the Revised Codes, inasmuch as the changes so effected are recognized and sanctioned by the provisions of Article 602 of the Revised Code of Procedure.

2. BURDEN OF PROOF—CHARGE OF THE COURT.—Article 51 of the Penal Code provides that, "On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." This provision of the Code should not be indiscriminately given in charge to the jury. It applies in those exceptional cases only wherein the burden of proof is on the accused to establish his defense. See the case of *Jones* v. *The State,* 13 Texas Court of Appeals, 1, for the views of this Court in exposition of this provision of the Penal Code.

3. MALICIOUS MISCHIEF—KILLING DUMB ANIMALS.—The offense denounced by Article 680 of the Penal Code consists of the *wilful* or the *wanton* commission of the act imputed to the accused, and this essential constituent of the offense is not deducible from the mere commission of the act. The burden is on the State to prove such other facts or circumstances as suffice to satisfy the jury, beyond a reasonable doubt, that the inculpatory act was either wilfully or wantonly done by the defendant; and an instruction to this effect is part of the law of the case to be given in charge to the jury.

4. REASONABLE DOUBT.—It is not correct to instruct a jury to acquit if they have a reasonable doubt of the guilt *or innocence* of the accused. The error in such a charge, however, usually enures to the benefit of the defendant.

5. "WILFUL."—This word, when used in a penal statute, means more than its import in common parlance. It means with evil intent or legal malice, or without reasonable ground to believe the act to be lawful.

6. "WANTON."—A wanton act is one committed in disregard of the rights of another, in a reckless spirit, or under circumstances which evince a lawless, wicked or mischievous intent.

7. SAME—CHARGE OF THE COURT.—In a trial for wilfully and wantonly killing certain dumb animals, the charge to the jury should expound the legal signification of the words *wilfully* and *wantonly.*

8. DEFENSE OF PROPERTY—CHARGE OF THE COURT—CASE STATED.—Defendant, who owned ewes upon the range, detected a party of roustabout rams tupping the ewes in the middle of summer, reckless of the fearful risks to which such unseasonable gallantries subjected the ewes and their offspring. Driving the rams away proving futile, and their owners being undiscoverable, the defendant consulted his neighbors and was advised to kill the rams; and soon afterwards their carcasses were found near his camp. *Held*, that on this state of proof the jury should have been instructed that the killing of the rams was not wilful or wanton within the meaning of the law, if done in the necessary protection of property of the slayer, after he had ineffectually used ordinary care to protect his property.

APPEAL from the County Court of Shackelford. Tried below before the Hon. J. L. Fisher, County Judge.

The facts are sufficiently disclosed in the opinion of this court.

*L. W. Campbell* and *D. Meyer*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. This conviction was had upon an information charging defendant with wilfully and wantonly killing four head of sheep. The punishment assessed was a fine of eighty dollars.

Trial was had on the third Monday in January, 1883, in the County Court. This was the time fixed by law for a civil term of said court. (Rev. Statutes, Art. 1173.) Motion in arrest of judgment was interposed upon the ground that the conviction was illegal, because obtained at a civil term of the court. The motion was overruled, and this is assigned as error.

It appears in the record that in November, 1877, the County Court of Shackelford county, by an order then made and entered upon the minutes of said court, changed the time of holding the criminal terms of said court from the *first* to the *third*

Mondays in each month. As the law then was, the said court had authority to make such change, and its order making the change had the force and effect of a law. (Acts 15 Leg., p. 17, sec. 2.) It will be found upon examination that this power in the County Court to change its terms no longer exists, the provisions of law conferring it having been omitted from the Revised Statutes. But this omission to continue this power in the court does not affect a change made in the terms of the court under the authority of the Act of 1876, above cited, because Article 602 of the Code of Criminal Procedure expressly recognizes such changes. That Article reads as follows: "The County Court of each county shall hold a term for criminal business on the first Monday in every month, *or at such other time as may have been fixed in accordance with law,*" etc.

In the case before us the time for holding the term of the County Court for criminal business in Shackelford county had been fixed in accordance with law. Counsel for appellant, in support of this assignment of error, cite us to *Wills* v. *The State,* 4 Texas Court of Appeals, 613. That decision is not applicable to this case, because it did not there appear that the term of the court had been changed in accordance with law. We think the court did not err in overruling defendant's motion in arrest of judgment.

Defendant assigns as error a portion of the court's charge to the jury, which reads as follows: "You are charged that the killing must be proved before you can find the defendant guilty, and, in case the evidence is sufficient to establish the killing, then it devolves upon him to show the facts or circumstances on which he relies to justify himself." This charge is erroneous, and was calculated to mislead the jury and prejudice the rights of the defendant. In order to constitute the killing of the sheep an offense under Article 680 of the Penal Code, the act of killing must have been either *wilful* or *wanton.* We presume the court, in giving this charge, considered that it was sanctioned by Article 51 of the Penal Code, which declares that, "On the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts or circumstances on which he relies to excuse or justify the prohibited act or omission." If the charge had been that, if the jury believed from the evidence that the defendant did *wilfully* or *wantonly* kill the sheep, then the offense was proved, and it devolved upon him to establish the facts or

circumstances on which he relied to excuse or justify such kill-ing, we might not consider it materially objectionable, though, in our opinion, it was not intended that Article 51, above quoted, should be given in charge to the jury except in those exceptional cases where the burden of proof rests upon the defendant to establish his defense.    Our views upon this question are fully explained in *Jones* v. *The State,* 13 Texas Court of Appeals, 1.

But, conceding that it would not have been objectionable in this case to give in charge the rule stated, it should certainly have been given fully and fairly; and it cannot be pretended that this was done.    Under the charge as given, the killing of the sheep being proved, the offense was complete, and the prosecution could rest its case.    Such is not the plain language of the law.    By the law, the State must not only prove the *act,* but the *intent,* the wilful or wanton spirit which accompanied its commission.    This essential ingredient of the crime is not proved by the mere act of killing.    There must be other facts or circumstances showing wilfulness or wantonness on the part of the defendant; and the burden is upon the State to adduce such other facts and circumstances, and they must be sufficient to satisfy the jury beyond a reasonable doubt that the killing was either wilful or wanton.    This manifestly erroneous charge is not corrected by any other portion of the charge.    A charge was asked by defendant, and refused by the court, which an-nounced the correct principle, and which should have been given instead of the erroneous charge which we have discussed. This refused charge is as follows:    "The bare fact of killing by defendant is not sufficient to establish a wilful or wanton killing, but the burden of proof rests on the State to show beyond a reasonable doubt that it was wilfully or wantonly done."  (*Davis* v. *The State,* 12 Texas Ct. App., 13.)

In the conclusion of the court's charge the jury are told that if there is a reasonable doubt in their minds as to the *guilt or innocence* of the defendant they must acquit.  This obvious error is one of strangely frequent occurrence in judges' charges, and one which has been repeatedly pointed out and condemned by this court.    It is not such an error, perhaps, as the defendant could complain of, because it is altogether favorable to him, and renders it impossible for the jury to convict him, provided they are governed by the charge.    If they have a reasonable doubt of his *guilt* they must acquit him, and if they have a reasonable doubt of his *innocence* they must likewise acquit him.    Evident-

ly, in this case, the jury rendered a verdict contrary to this charge of the court, because they did not acquit the defendant, and surely they must have entertained a reasonable doubt of his *innocence* or they would not have convicted him.

Because of the error in the charge of the court herein first noticed, and the error in refusing to give the charge asked by the defendant, the judgment must be reversed and the cause remanded for a new trial; and in view of another trial, we deem it proper to notice other questions presented in the record.

We think it pretty clearly appears from the evidence that the ·defendant killed the sheep, but that he killed them in defense ·of his own sheep—in the protection of his own property. He had a flock of sixteen hundred ewes herded upon the range in the month of July. These sheep charged to have been killed were "bucks," and got with his ewes, and were getting them with lambs. According to the evidence of experts in sheep raising, the lambs begotten at that season of the year would be born in the winter, and forty-nine out of every fifty of the ewes thus having lambs, and all the lambs, would die. Defendant's flock of ewes were therefore in imminent danger of being utterly destroyed by the untimely ravages of these wandering "bucks." Defendant saw and understood the situation, and he, time and again, drove the bucks away from his ewes, but they, being ignorant, doubtless, or at least careless, of the fatal injury they were inflicting upon the ewes, would return to the flock as often as they were separated from it. Defendant made diligent inquiry to ascertain the owner of these roving bucks, but he could not be found. He then asked the advice of neighbors as to what he should do to protect his ewes, and was advised to kill the bucks; which advice he probably followed, for their dead bodies were soon afterwards found near the defend-ant's camp.

Now, under these circumstances, did the defendant commit a crime in killing the bucks? Did he kill them *wilfully* or *wantonly?* Of course he killed them intentionally, but it is not every intentional act that is a wilful or wanton act. When used in a penal statute the word "wilful" means more than it does in common parlance. It means with *evil intent*, or legal malice, or without reasonable ground for believing the act to be lawful. (*The State* v. *Preston*, 34 Wis., 675; *The State* v. *Clark*, 29 N. J. L., 96; *Savage* v. *Tuller*, Brayt. Ver., 223; 1 Abb. U. S., 196.) In common parlance it is used in the sense of *intentional*, as dis-

tinguished from accidental or involuntary. To make the killing of the sheep, therefore, a *wilful* act, it must have been committed with an *evil intent*, with legal malice, and without legal justification. To make the killing a *wanton* act, it must have been committed regardless of the rights of the owner of the sheep, in reckless sport, or under such circumstances as evinced a wicked or mischievous intent, and without excuse. (*Jones* v. *The State*, 3 Texas Ct. App., 228.)

In *Branch* v. *The State*, 41 Texas, 622, in speaking of this offense it is said: "The act must be done intentionally and by design, and without excuse, and under circumstances evincing a lawless and destructive spirit." This case has been cited and approved in several subsequent decisions. (*Jones* v. *The State*, 3 Texas Ct. App., 228; *Lott* v. *The State*, 9 Texas Ct. App., 206; *Davis* v. *The State*, 12 Texas Ct. App., 12.) In the case before us the principles announced in these decisions should be submitted in proper instructions for the consideration of the jury, and the jury should be instructed in the legal meaning of the terms "wilful" and "wanton," as hereinbefore explained. If the defendant killed the sheep in the necessary protection of his own property, after using ordinary care to prevent the injury which was being inflicted upon it, it would not be a wilful or wanton act within the meaning of Article 680 of the Penal Code. It might be a trespass for which he would be answerable in a civil action for damages, but it would not be a crime.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered May 12, 1883.