[Crim. No. 811.   Third Appellate District.—November 12, 1924.]

## THE PEOPLE, Respondent, v. LLOYD SWIGGY, Appellant.

[1] CRIMINAL LAW—FAILURE TO PROVIDE FOR MINOR CHILD—VERDICT—EVIDENCE.—In this prosecution, under section 270 of the Penal Code, for failure to provide for a minor child, the evidence was sufficient to support the verdict of guilty.

[2] EVIDENCE—PRESUMPTIONS—BIRTH OF INFANT—TIME.—It must be presumed that gestation and the birth of an infant occurred according to the ordinary course of nature, or that the average interval of time between the time of insemination and the date of parturition is nine calendar months, in the absence of a showing based upon a scientific hypothesis that an exception has arisen in a given case.

[3] CRIMINAL LAW—SECTION 270, PENAL CODE—CONSTRUCTION. — The word "willfully," as used in section 270 of the Penal Code, which

1.   See 8 R. C. L. 306; 20 Cal. Jur. 422.
3.   See 20 Cal. Jur. 424.

provides "A father of either a legitimate or illegitimate minor child who willfully omits without lawful excuse to furnish necessary food, clothing, shelter or medical attendance for his child is guilty of a misdemeanor," means a deliberate intention or a set purpose to omit to perform the natural duty which the section declares that an omission to perform shall be penalized.

[4] ID.—WILLFUL OMISSION NECESSARY ELEMENT OF CRIME.—To establish the guilt of the accused under section 270 of the Penal Code, proof that omission by him to furnish the necessary or required support for the child was willful or with a set purpose to do so is indispensable.

[5] ID.—AGREEMENT RELIEVING FATHER OF RESPONSIBILITY FOR SUPPORT—EVIDENCE.—In a prosecution under section 270 of the Penal Code for alleged failure of a father to provide for his minor child, the action of the trial court in refusing to permit the defendant to show, as he offered to do, that, at the time of the marriage between him and the mother of the child, an agreement was made between him and the mother, or even between him and the mother of the prosecutrix (the mother of the child), whereby it was agreed that he would not be required to support or furnish clothing for or in any manner or measure to contribute to the support of the child, was not only erroneous but highly prejudicial.

[6] ID.—EVIDENCE—IMPEACHMENT—ADMISSION.—In such prosecution, a question asked the mother of the child on cross-examination, whether at the time of her marriage to defendant it was not the distinct understanding between her mother, herself, defendant's counsel, and defendant that he would not be called upon to either live with her or support the child, was proper for the purpose either of securing from the mother of the child an admission of the fact or of her impeachment in case she denied it.

[7] ID.—CONTRACTS—WILLFUL OMISSION.—If a parent enters into an agreement with another party to care for and support his child and the parent is at any time thereafter notified that the custodian of the child no longer intends to give it support, etc., or if it became known to the parent from any source that such custodian was not giving it such support as it required, the parent, if he then failed to properly support the child, would be amenable to prosecution under section 270 of the Penal Code; but where there is such an agreement and the parent has no knowledge that the child is not being properly taken care of by the party agreeing to assume that responsibility, he cannot be punished for "willful" omission to furnish the child with support, maintenance, etc.

---

5. See 20 Cal. Jur. 429.

7. Criminal responsibility of parent for failure to support child where support is furnished by others, notes, 32 L. R. A. (N. S.) 841; L. R. A. 1915A, 564.

[8] Id.—Paternity of Child—Evidence.—In such prosecution, the testimony of defendant's counsel that, after the negotiations for the marriage between defendant and the mother of the child, he stated to the mother "we deny the parentage of the child," and that she replied, "All right," was improperly stricken out.

[9] Id.—Appeal—Briefs.—In such prosecution, where the people (respondent) filed no brief in the district court of appeal and did not petition that court for a rehearing after reversal of the judgment of conviction, the supreme court is not inclined to grant a hearing for the purpose of enabling a litigant to present arguments to it which should have been presented to the district court of appeal. (Opinion of supreme court, on denial of hearing.)

[10] Id.—Waiver of Support—Contract by Mother—Effect upon Rights of Child.—The mother of a child has no authority or power by agreement or release or waiver to deprive her child of its legal right to be supported and maintained by the father, or to relieve the father from the corresponding obligation imposed upon him by law, or to nullify the provisions of section 270 of the Penal Code. (Opinion of supreme court, on denial of hearing.)

[11] Id.—Issues—Paternity—Evidence.—In such prosecution, where one of the principal issues in the case was whether or not the defendant was the father of the child, and the prosecution had proved the fact of defendant's marriage to the child's mother as an implied admission of paternity by the defendant, the latter should have been permitted to prove the circumstances of the marriage to rebut, if he could, this inference, and evidence offered to prove that, immediately before the marriage between defendant and the child's mother, an agreement was entered into between them relieving defendant of the responsibility of supporting the child or contributing to its support should have been admitted. (Opinion of supreme court, on denial of hearing.)

[12] Id.—Contract—Willful Omission—Evidence.—In such prosecution, proof of the agreement between defendant and the child's mother relieving the former of responsibility of supporting the child or contributing to its support would not conclusively establish the absence of willfulness as an element of the crime charged. (Opinion of supreme court, on denial of hearing.)

---

(1) 29 Cyc., p. 1679. (2) 22 C. J., p. 103, sec. 46. (3) 29 Cyc., p. 1677. (4) 29 Cyc., p. 1676. (5) 29 Cyc., p. 1678. (6) 29 Cyc., p. 1679. (7) 29 Cyc., p. 1678. (8) 29 Cyc., p. 1679. (10) 29 Cyc., p. 1606. (11) 29 Cyc., p. 1679. (12) 29 Cyc., p. 1677.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Reversed.

The facts are stated in the opinion of the court.

Howe, Hibbitt, Meldon & Johnston for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was convicted by a jury in the superior court of Sacramento County under an indictment charging him with the violation of the terms of section 270 of the Penal Code and he has brought the case to this court on an appeal from the judgment.

The testimony upon which the People principally relied for the support of the indictment was that of the wife of the defendant. From her testimony it appears that, on the first day of November, 1922, she for the first time met the defendant. She was at that time within a few days of being fifteen years of age. A few days after she first met and became acquainted with the accused he took her for a ride over what is known as the Natomas Boulevard, a highway leading from the city of Sacramento and extending a considerable distance from and north of said city. After traveling several miles, the accused had sexual intercourse with her. On a subsequent occasion, about five days from the time of the commission of the first sexual act, he again had similar relations with her. The girl shortly thereafter discovered that she was in a condition of pregnancy. On the thirteenth day of August, 1923, approximately nine calendar months from the occasions on which the two several acts of illicit intercourse were committed by the parties, she gave birth to a female child at a lying-in hospital or home, situated in near proximity to the city of Sacramento. On the twenty-sixth day of September, 1923, after being discharged from the hospital, she swore to a complaint before the justice's court of Sacramento township, in the city of Sacramento, charging the defendant with the crime of statutory rape. (Pen. Code, sec. 261, subd. 1.) At the same time and before the same magistrate, she swore to a complaint, charging one Al Hotter with a like offense, it being alleged that the said Hotter had sexual relations with her in the month of December, 1922. On the thirty-first day of October, 1923, the girl, then not quite sixteen years of age, intermarried with the defendant, and on the same day the proceedings

or complaints then pending before the magistrate against the defendant and Hotter were dismissed upon the motion of the district attorney. The facts so far stated are not disputed. In fact, the defendant admitted to a deputy sheriff that he had had sexual relations with the girl, but stated that he had so managed the malodorous business as to make conception impossible.

The prosecutrix, as we shall hereinafter refer to the wife of the defendant, testified that the defendant was the father of the child; that, from the date of her marriage with the defendant, they had not lived together or had anything to do with each other; that he never at any time furnished clothing for the baby or otherwise contributed anything toward caring for it; that, after the birth of the child, she had met him on the streets of Sacramento, but had not conversed with him, although, when thus they met, they would always exchange such salutations as, "Hello," and "How do you do"; that (on cross-examination) she never communicated with him in any way; that she never told the accused either before or after their marriage that he was responsible for her pregnacy or that he was the father of her baby, nor, until she caused him to be indicted by the grand jury on the present charge, had she ever asked him to contribute to the support and care of the baby; that she did not let him know that she was at the hospital and that he did not, while she was there, visit the hospital, so far as she knew.

The defendant did not testify in the case, but his attorneys rested their defense entirely upon the claim that the intermarriage of the defendant with the prosecutrix was the result of an arrangement and understanding entered into between one of the attorneys for the accused and the mother of the prosecutrix, involving an agreement, the terms of which, so it was sought to be shown at the trial, were communicated to the prosecutrix and assented to by her, to the effect that the marriage was not to be understood as implying an admission on the part of the accused that he was the father of the child, but that the sole motive and the purpose of the marriage were merely to "give the child a name" with the understanding or agreement that the parties were never to live together and that the defendant was to be wholly relieved from any obligation to support the child.

One of the nurses at the hospital where the child was born, testifying in behalf of the defendant, and as in impeachment of the testimony of the prosecutrix, stated that in a conversation with the prosecutrix at the hospital, just before the birth of the child, she said that she would not be able to determine which of the persons with whom she had had relations was the father of the child until she knew the precise date of the birth thereof; that if it was on a certain day the father would be a certain person, naming him, if on another or different date, it would be someone else, naming him; that she also stated that she would prefer to put it upon the defendant, because she liked him better than she did the other party.

[1] It is not seriously contended, nor could it well be at all, notwithstanding the testimony of the nurse referred to, that the verdict does not derive sufficient support from the evidence. The undisputed testimony of the prosecutrix that she was sexually violated by the defendant in the early days of November, 1922, is borne out by the uncontroverted fact that parturition occurred on the thirteenth day of August, 1923. Thus it will be noted that the interval between the time of insemination and the date of parturition was nine calendar months, and that period of time, according to the consensus of medical authority, is, with humankind, the average interval between the two events mentioned. There may be, and no doubt there have been, found exceptional cases, or cases in which the intervals between the two events referred to were either longer or shorter, a fact which medical men have been able, in particular cases, to rationally account for upon the peculiar conditions existing in such cases. [2] But however that may be, the general medical opinion, founded upon applied experience, is as is above stated, and, therefore, in the absence of a showing based upon a scientific hypothesis that the exception has arisen in a given case, it must be presumed that gestation and the birth of the infant occurred according to the ordinary course of nature. (Code Civ. Proc., sec. 1963, subd. 28.) There was no showing or attempt to show that the period of gestation in this case was of a shorter duration than is natural or usual in such cases. Hence, the jury, giving, as we must assume that they did give, full credit to the testimony of

the prosecutrix as to the time at which sexual relations took place between her and the defendant, were warranted in discrediting the rather vague claim of the defendant that Hotter, whose sexual relations with the girl happened in December, 1922, was or might have been the father of the child.

It will be observed from the foregoing that if the only question submitted on this appeal was whether the verdict was or was not sufficiently supported by the evidence, there would be nothing else to do but to affirm the judgment. It is clear, however, that there must be a reversal because of serious and prejudicial errors committed by the court in ruling upon questions involving the admissibility of certain evidence.

One of the essential ingredients of the crime with which the defendant is charged is that he *willfully* committed the act of omission of which he is accused. Section 270 of the Penal Code, upon which the indictment was founded, reads in part as follows: "A father of either a legitimate or illegitimate minor child who *willfully* omits without lawful excuse to furnish necessary food, clothing, shelter or medical attendance for his child is guilty of a misdemeanor," etc. The court, however, appears to have proceeded upon the theory that there were but two vital questions in the case, to wit: 1. Whether the defendant was the father of the child, and, 2. Whether he had failed to furnish the infant with proper support. Testimony as to these questions, the court stated, would be competent and admissible, but refused to allow the defendant to prove that, immediately before the marriage to the plaintiff, an agreement was entered into between him, through his counsel, and the prosecutrix, whereby he was to be relieved of the responsibility of supporting the child or contributing to its support.

[3] The word "willfully," as used in section 270, means a deliberate intention or a set purpose to omit to perform the natural duty which the section declares that an omission to perform shall be penalized. The word, when used in criminal statutes, has been said to be a stronger word than the word "intentionally" in so far as the word may expose the intention or purpose in the mind of the defendant, and

that ''it means governed by the will; obstinate; perverse.''
(*Johnson* v. *State,* 61 Ala. 9.)   In *Fry* v. *Hubner,* 35 Or. 184
[57 Pac. 420], it is said that the word ''willfully'' is equiva-
lent to the word ''knowingly.''   (See, also, *North Carolina*
v. *Vanderford,* 35 Fed. 282; *Leslie* v. *Rich Hill Coal Min.
Co.,* 110 Mo. 31; *State* v. *Preston,* 34 Wis. 675; *People* v.
*Brooks,* 1 Denio (N. Y.), 457, 43 Am. Dec. 704.)   In *Potter*
v. *United States,* 155 U. S. 438 [39 L. Ed. 214, 15 Sup.
Ct. Rep. 144, see, also, Rose's U. S. Notes], the court held
an indictment to be bad because there was omitted there-
from the word ''willfully'' in attempting to state an offense
denounced and defined by a statute declaring it to be a
penal offense for any officer, clerk, or agent of any national
banking association to ''willfully'' certify any check drawn
upon such association, unless the person or company draw-
ing the check has on deposit in such association an amount
equal to the amount specified in the check.   It was there
held that where an act of omission willfully done is made
a crime, the offense is not stated unless such act is alleged
to have been willful and not proved unless shown to have
been such.   The court said that the word ''willful,'' as
used in such statute, or in any other statute in which the
word ''willful'' is made a vital ingredient of the crime,
''implies upon the part of the officer (or other person as
the case may be) knowledge and purpose to do wrong,''
citing *Felton* v. *United States,* 96 U. S. 699, 702 [24 L. Ed.
875, see, also, Rose's U. S. Notes] ; *Commonwealth* v. *Knee-
land,* 20 Pick. (Mass.) 220; *Evans* v. *United States,* 153 U. S.
584, 595 [38 L. Ed. 830, 14 Sup. Ct. Rep. 934].   ''It is
frequently understood as signifying an evil intent without
justifiable excuse.''   (1 Bishop's Criminal Law, sec. 428.)

[4] In the present case, as has already been noted, to
establish the guilt of the accused under section 270 of the
Penal Code, proof that omission by him to furnish the
necessary or required support for the child was willful or
with a set purpose to do so was indispensable. [5] If,
therefore, the defendant, as he offered to do, could have
shown that, at the time of the marriage, an agreement was
made between him and the prosecutrix, or even be-
tween him and the mother of the prosecutrix, whereby it
was agreed that he would not be required to support or

furnish clothing for or in any manner or measure to contribute to the support of the child, the element of willfulness in his omission to furnish such support would have been wanting and he, per consequence, would be entitled to an acquittal. The court, however, refused to allow such a showing to be made, confining the defendant to proof addressed only to the questions whether he was the father of the child and, if so, whether he had omitted or failed to contribute to its support. This course, upon the part of the court, was not only erroneous but highly prejudicial.

[6] On cross-examination counsel for the defendant asked the prosecutrix the following question: "Mrs. Swiggy, at the time of your marriage to Mr. Swiggy, was it not the distinct understanding between your mother, yourself, Mr. Howe and Mr. Swiggy that he would not be called upon to either live with you or support the child?" Objection by the district attorney to that question on the ground that "it is irrelevant, incompetent and immaterial, in that it did not tend to prove any of the issues in this case," was sustained by the court. The question involved a vital matter in the case and was proper for the purpose either of securing from the prosecutrix an admission of the fact or of her impeachment in case she denied it.

Furthermore, Attorney Howe, one of the counsel for the defendant, was called as a witness by the latter, and testified that, on the thirty-first day of October, 1923, the mother of the prosecutrix stated to him that, for the purpose of giving the baby a name, she desired that the prosecutrix and the defendant should marry. After some discussion of the proposition it was agreed to by the defendant, the latter's sole motive for sanctioning the proposition being to stop further proceedings on the charge of rape then pending against him. Howe further testified that, during the negotiations leading to the marriage, it was distinctly agreed that the marriage was not to be taken as an acknowledgment by the defendant that he was the father of the child, that he and the prosecutrix were not to live together, and that he was not to support or contribute to the support of the infant. During those negotiations, Howe stated, the prosecutrix was not present, but that subsequently she was told by the witness that her mother desired that she and the defend-

ant be married in order that the child might have a name. "All they wanted," proceeded the witness, "was the name; there was to be no support and the mother of the child was to apply, very soon, for the annulment of the marriage." The witness was asked on direct examination: "Mr. Howe, prior to the marriage of this defendant and Mrs. Swiggy, state whether or not there was anything said or done with reference to the support of the child?" Objection on the ground that "the question is too general and is incompetent, irrelevant and immaterial, not bearing upon any of the issues of the case," was sustained, the court saying that "the law fixes responsibility of the support of the child and he (referring to defendant) couldn't make any arrangements with Mr. Howe or anybody else that would relieve him of that responsibility." The court added that permission would be given the witness "to answer whether or not the witness who testified yesterday (prosecutrix) ever made any statement concerning the parentage of the child in his (Howe's) presence." Following this suggestion by the court, the attorney examining the witness for the defendant asked Howe this question: "Mr. Howe, was there anything stated at that time, during those negotiations with reference to the parentage of this child?" Confining, by direction of the court, an answer to the question to any such conversation had with the prosecutrix, the witness stated that, after the negotiations referred to, he met the prosecutrix and said to her that "we deny the parentage of the child, and the girl (the prosecutrix) answered to this statement, 'All right.'" The court thereupon struck out "all of Mr. Howe's testimony as not competent or material." The attorney for the defendant then made the offer to prove that the agreement made between the defendant, through Attorney Howe and the mother of the prosecutrix, that, although the marriage be consummated, the defendant would not be required to support the child, and further offered to prove by the same witness that the agreement so made, with other matters agreed to in the negotiations between Howe and the mother of the prosecutrix, was explained to the prosecutrix and that she assented thereto, whereupon the marriage took place. The court sustained the objection of the district attorney to the proffered proof upon the ground that it was irrelevant, incompetent and immaterial.

As stated above, the disallowance of the testimony proposed by the defendant to prove that an agreement as above indicated had been entered into between him, the mother of the girl and the prosecutrix was clearly error. Indeed, the element of willfulness in the crime charged seems to have been overlooked by the court, for, as we have above shown, the court repeatedly stated that no testimony with regard to such an agreement as the one proposed to be shown by the defendant was admissible as a defense against the conduct of the defendant in failing or omitting to contribute to the support of the child.

[7] Of course, it is true that if a parent enters into an agreement with another party to care for and support his child and the parent is at any time thereafter notified that the custodian of the child no longer intends to give it support, etc., or if it became known to the parent from any source that such custodian was not giving it such support as it required, the parent, if he then failed to properly support the child, would be amenable to prosecution under section 270 of the Penal Code. But, as we have stated, where there is such an agreement and the parent has no knowledge that the child is not being properly taken care of by the party agreeing to assume that responsibility, he cannot be punished for "willful" omission to furnish the child with support, maintenance, etc. At any rate, the question whether the defendant in this case willfully omitted to furnish the child with proper support was an important issue and the defendant was entitled to introduce any competent proof tending to show that there was at the time of the marriage an agreement between him and the prosecutrix that he would not be required to support the child.

[8] It is also clear that the testimony of Howe that he stated to the prosecutrix that "we deny the parentage of the child," and that she replied, "All right," was improperly stricken out. The testimony of Howe might have been more specific and direct as to the defendant's denial of parentage, but it was sufficiently clear to reasonably render her answer to the question subject to the interpretation that she acquiesced in the claim of the defendant that he was not the father of the child and should have been allowed to go to the jury for what it was worth. Indeed, the answer, considered with her own admissions that she never

had accused the defendant of being the father of the child until she caused his arrest on the charge of rape and that she had never called upon him to support the child, was peculiarly important and significant as in support of the defendant's claim that he was not the father of the child.

The judgment is reversed.

Finch, P. J., and Plummer, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 8, 1925, and the following opinion then rendered thereon:

THE COURT.—The petition of respondent for a transfer and hearing by this court after decision of the district court of appeal is denied.

[9] Counsel for respondent filed no brief in the district court of appeal and did not petition that court for a rehearing. Under such circumstances we are not inclined to grant a hearing for the purpose of enabling a litigant to present arguments to this court which should have been presented to the district court of appeal. We do not interpret the opinion of the district court of appeal herein as holding that an agreement between the parents of a child, purporting to release the father from all obligation to support or maintain the child, could have the effect of exculpating the father from a violation of Penal Code, section 270. [10] The mother of a child has no authority or power by agreement or release or waiver to deprive her child of its legal right to be supported and maintained by the father, or to relieve the father from the corresponding obligation imposed upon him by law (*Fernandez* v. *Aburrea*, 42 Cal. App. 131 [183 Pac. 366]; *Pacific G. D. Co.* v. *Industrial Acc. Com.*, 184 Cal. 462 [13 A. L. R. 725, 194 Pac. 1]; *Llewellyn Iron Works* v. *Industrial Acc. Com.*, 191 Cal. 28 [214 Pac. 846]; *Svoboda* v. *Superior Court*, 190 Cal. 727 [214 Pac. 440]), or to nullify the provisions of section 270. [11] But the evidence offered to prove such an agreement, which was excluded by the trial court, should have been admitted. It was relevant to the question whether or not the defendant is the father of the child, which was one

of the principal issues in the case. The prosecution had proved the fact of defendant's marriage to the child's mother as an implied admission of paternity by the defendant. He should have been permitted to prove the circumstances of the marriage to rebut, if he could, this inference. **[12]** It may be that this evidence was also relevant to the issue of willfulness as an element of the crime charged, but proof of such agreement would not conclusively establish the absence of this element.