[Crim. No. 388.   Fourth Appellate District.—August 12, 1939.]

THE PEOPLE, Respondent, v. ROWDEN EDLAND, Appellant.

A. D. Mitchell for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with failure to provide for a minor child. A jury found him guilty and judgment was pronounced sentencing him to confinement in the county jail. Execution of the sentence was suspended on the condition that he pay $12.50 per month toward the support of the child. He has appealed from the judgment and from an order denying his motion for a new trial.

The appellant's first contention is that the evidence is not sufficient to support the implied finding that he was the father of the child in question. It appears that the child was born on March 1, 1939, and that the appellant was married to the mother of the child on December 8, 1938. He testified that he first met the mother of the child on August 23, 1938. He relies upon a portion of her evidence to the effect that sexual intercourse between them began within two weeks after they met. From this he argues that conception took place on September 5, 1938, and that only 176 days elapsed between that time and the birth of the child. From the testimony of a physician to the effect that the child looked like a "full-time" child the appellant argues that conception must have taken place the latter part of May, 1938, and that it follows that it was biologically impossible for him to have been the father of the child.

The theory thus advanced overlooks certain other evidence which was before the jury, only a part of which need be men-

tioned. The mother of the child testified that she first met the appellant on July 29, 1938, and that she first had sexual intercourse with him within a week of that time. If her testimony is believed, approximately seven months elapsed before the child was born. A physician testified that the birth of a baby in approximately seven months after conception is not uncommon. He also testified that a fall suffered by a woman, if severe enough, could cause a premature birth. There is evidence that on the morning before this child was born the mother fell from a porch which was about three feet high, that she immediately began to feel the effects of the fall, and that she was then taken to the hospital. While the physician who attended her when the child was born testified that the child looked like a "full-time" baby, when asked whether it was a "seven months" or a "nine months" baby, he replied that he could not answer the question. Another physician testified that he examined the mother of the child on November 25, 1938, and concluded that she was "between two and three months pregnant," which tends to support the mother's testimony. If, as the appellant contends, this child was conceived the latter part of May, 1938, the mother would have been about six months pregnant at the time of the examination and it seems unreasonable that an experienced doctor would have mistaken a six months pregnancy for one of two or three months.

The appellant talked to the father of the girl on November 1, 1938, and asked his permission to have something done to procure an abortion. The appellant admitted at the trial that his testimony at the preliminary hearing, with respect to when he first met the mother of the child, was not the truth.

The testimony of the appellant and the testimony of the mother of the child, with respect to the date on which they first met, are each corroborated by the testimony of several witnesses. The question of whether the appellant was the father of the child was a question of fact for the jury, and a portion of the evidence amply sustains the finding in that regard.

■ The only other point raised is that the court erred in excluding evidence offered by the appellant to the effect that, prior to the marriage, it was agreed between him and the mother of the child and her parents that if he would marry her he would not be called upon to live with her, nor to sup-

port the expected child. The appellant relies upon *People* v. *Swiggy*, 69 Cal. App. 574 [232 Pac. 174], where a judgment against the defendant was reversed because of the court's refusal to admit evidence substantially the same as that here offered. In denying a hearing in that case the Supreme Court said: "The prosecution had proved the fact of the defendant's marriage to the child's mother as an implied admission of paternity by the defendant. He should have been permitted to prove the circumstances of the marriage to rebut, if he could, this inference." An inference of paternity arising from such a marriage would seem to be based on the supposition that ordinarily a man would not marry a woman under such circumstances, unless he believed that he was the father of the expected child. The real inference to be drawn is that he so believed. In the case cited, evidence of the marriage had been introduced for the purpose of raising such an inference. It does not appear that there was any evidence of the defendant's state of mind in that regard other than this inference. It was, therefore, held that evidence of an agreement that the defendant was not to be called upon to support the child should have been received for its effect in rebutting such an inference.

In the instant case, we have a somewhat different situation. The record shows the following while the appellant was being cross-examined with respect to his testimony at the preliminary hearing:

"Q. Now I will ask you if this question was asked you and if you made this answer at that time and place: 'Q. You knew this girl expected to be a mother when you took her over there and married her, didn't you? A. Yes sir.' You made that answer to that question? A. Yes sir. 'Q. And you knew you were responsible for her condition? A. No, I did not know that. Q. You married her with the assumption you were? A. Yes sir.' Q. Did you make that answer? A. Yes."

This is direct testimony by the appellant that at the time of the marriage he believed he was the father of the child. It was not necessary for the jury to infer from the fact of marriage that the appellant believed himself to be the father of the child for he directly testified to that effect. In the absence of other evidence, the excluded evidence would have supported an inference contrary to the one to be drawn from the fact

of marriage. But in the instant case the former inference was overcome by the direct evidence. Not only was the appellant not entitled to have an inference drawn for the purpose of rebutting his direct testimony, but it is unreasonable to believe that the jury could or would have drawn the inference from the excluded evidence that he did not believe himself to be the father of the child, in the face of his positive testimony that at the time of the marriage he did so believe. While it might have been better to have admitted the evidence in question we think it appears, under the circumstances of this case, that it could not have affected the result and that its exclusion was not prejudicial error. After reading the entire evidence we are far from convinced that a miscarriage of justice has resulted.

The judgment and the order denying a new trial are affirmed.

Griffin, J., and Haines, J., *pro tem.*, concurred.