STATE v. JAMES L. YOPP.

*Police Power—Highways—Nuisance.*

1. Every citizen holds his property subject to the implied obligation that he will use it in such way as not to prevent others from enjoying the use of their property.

2. Subject to constitutional provisions, the Legislature may impose reasonable restraints upon the use which a citizen makes of his property, in order to protect others in the use of their property.

3. The Legislature has complete power to regulate the highways in the State, and may prescribe what vehicles may be used on them, with a view to the safety of passengers over them, and the preservation of the road.

4. A statute which only regulates the use of property in a manner beneficial to the public, but does not destroy it, is not unconstitutional, unless the restraint is so manifestly unjust and unreasonable as to destroy the lawful use of the property.

5. If the use of property creates a nuisance the Legislature has the power to destroy it.

6. The Legislature has the power to pass an act which may leave the doing or not doing of certain things allowed or forbidden by the act to the discretion of some designated agent or commissioner.

7. Where a statute forbade the use of bicycles on a certain road, unless permitted by the superintendent of the road, *it was held*, that the act was not unconstitutional.

INDICTMENT, heard before *Meares, Judge,* at September Term, 1886, of the Criminal Court of NEW HANOVER county.

There was a verdict of guilty, and from the judgment thereon the defendant appealed.

The facts appear in the opinion.

*The Attorney-General,* (*Messrs. C. M. Stedman* and *Weill,* also filed a brief,) for the State.

*Messrs. D. L. Russell* and *Ricaud,* for the defendant.

MERRIMON, J. The power of government—commonly called the police power—to regulate the conduct of individuals in the exercise of their personal rights, and the use of property, with the view to secure the just enjoyment of right, of whatever nature, of every individual—to promote the public convenience, safety, and common good, is essential, and as well, very great and comprehensive in its nature and extent. It is founded very largely in the maxim, *sic utere tuo ut alienum non lædas,*

and also, to some extent, that other maxim of public policy, *salus populi, suprema lex,* and it is of almost universal application in regulating the interests of society within the jurisdiction of the State. It is too well settled to admit of serious question, that every person is subject to it in his person and property. And however absolute his rights to and ownership of property may be, he holds it subject to the implied obligation that he will use it in such way as not to prevent others from having their property, and enjoying the just use and benefit of it, and as will not destroy, abridge or injure the rights of the public. The Legislature, in the exercise of this power, may, subject to any constitutional limitations, prescribe just and reasonable regulations and restraints, in order to secure such important ends, and enforce them by such proper penalties and other means as it may deem expedient and wise.

The extent of this power has not been defined with precision. Indeed, it seems to be practically impossible to do so, because of the vast variety of conditions and circumstances governing its application. We are not, however, embarrassed by any question in this respect here. It is clear that the Legislature has complete power to provide proper and reasonable police regulations, and to amend or alter them from time to time, in respect to the highways of the State, and persons going upon and over them with their vehicles, horses, and other motive power, with a view to protect the roads, and the safety and comfort of passengers going over them. The power is constantly exercised, and it is prudent and necessary to do so, as common experience everywhere proves. Many persons are more or less selfish, and seek their own advantage, and consult their own convenience, fancy or pleasure, without proper regard for the like rights of others—sometimes at their expense; and hence legal restraints and regulations are necessary.

As we have seen, no man has the right, in the use of his own property, of whatever nature, to use it so as to injure another in the just use of his, or the exercise of his personal rights. Hence, there is no reason why the owner of a particular kind of vehicle, which, because of its peculiar form or appearance, or from the unusual manner of its use, frightens horses, or otherwise imperils passengers over the road, or their property, shall be allowed to use such vehicle on the road. He has no right to use it to the prejudice or injury of others, who are lawfully exercising their rights in the use of their property.

If it be said, when shall one person be restrained in doing as he will with his own property—from going, for example, on the highway with his own vehicle of whatever kind—the answer is, whenever in the ordinary lawful course of things in that connection, he would, by the use of his property—his vehicle, in the case suggested—interfere materially in any respect, with another, in the ordinary, lawful use of his property or rights. He might be restrained in one place, and not in another—he might go upon one highway, and not upon another—he might go upon one highway at one time, and not at another—he might be restrained under one class of circumstances, and not under another—in all such cases, the restraint depending on the different attendant circumstances, as perhaps the numbers and kinds of persons passing over the highway—the kinds of roads, the character and purposes of the highway—its use at one time as different from the same at another, and the like considerations. The person thus restrained might be affected adversely in the use of his property—disappointed in his cherished wishes—in the indulgence of his fancy—in taking pleasure or recreation—perhaps as to his substantial interests—but these must all give way to the extent necessary to allow others to have and enjoy their lawful rights, however these may arise, to the exercise of the power of government to prescribe such regulations and restraints.

STATE *v.* YOPP.

In the case before us, the statute (Pr. Acts, 1885, ch. 14) forbids every person "to use upon the road of said company a bicycle, or tricycle, or other non-horse vehicle, without the express permission of the superintendent of said road," &c. The purpose of this statutory provision is not to destroy the defendant's property—his bicycle—or to deprive him of the use of it, in a way not injurious to others, but to prevent him from using it on a particular road—that mentioned—at a particular time or season, when it would, by reason of its peculiar shape, and the unusual manner of using it as a means of locomotion, prove injurious to others—particularly women and children, constantly passing and repassing in great numbers over the particular road mentioned, in carriages and other ordinary vehicles drawn by horses.

The evidence tended strongly to show, that the use of the bicycle on the road materially interfered with the exercise of the rights and safety of others in the lawful use of their carriages and horses in passing over the road. In repeated instances, the horses became frightened at them, and carriages were thrown into the ditches along the side of the road. It was not uncommon for horses to become frightened at them, and become unruly, if the evidence is to be believed.

The statute did not deprive the defendant of the use of his property—he might have gone another way—he might have gone at an opportune time, with the express permission of the superintendent of the road. In any case, he had no right to go, using his bicycle, at the peril of other people, he giving rise to such peril. The statute did not therefore, in any just sense, destroy his property, as contended, or deprive him of the proper and reasonable use of it; nor was such its purpose. Its purpose was lawful, and in our judgment, it does not provide an unreasonable police regulation—certainly not one so unreasonable as to warrant us in declaring it void. Such statutes are valid, unless the purpose, or

31*

necessary effect is, not to regulate the use of property, but to destroy it.

As we have said, it is the province of the Legislature to decide upon the wisdom and expediency of such regulations and restraints, and the Courts cannot declare them void, or interfere with their operation, unless they are so manifestly unjust and unreasonable as to destroy the lawful use of property, and hence, are not within the proper exercise of the police power of the government. Courts cannot regulate the exercise of this power—they can only declare the invalidity of statutes that transcend its limits. The exercise of this power does not extend to the destruction of property, under the form of regulating the use of it, unless in cases where the property, or the use of it, constitutes a nuisance. In such cases, if the owner of the property suffers injury, it is such as happens in the illegal use of it, or because the property itself, in its nature or application, is unlawful, and it is *damnum absque injuria*. No man has a right to use his property so as to produce a nuisance, or to have property which is a nuisance where it may be situated.

It is further objected, that the statute leaves it to the arbitrary discretion of the superintendent of the road named to allow or disallow persons to use " a bicycle or tricycle, or other non-horse vehicle " on it. This is a misapprehension of the true import of the provision cited. The discretion vested in the superintendent is not arbitrary. He is made the agent of the law, as well as superintendent, and he is bound to exercise the discretion vested in him honestly, fairly, reasonably and without prejudice or partiality, for the just purpose of effectuating the intention of the statute. If there be times or seasons, or occasions, when persons wishing to use bicycles or other like vehicles embraced by the prohibitory clause of the statute in question, it is his plain duty to allow them to do so at such times. The authority is not his—he is simply made the agent of the law for a lawful

purpose, and he is amenable as such for any prostitution of the power so vested in him, and the creation of the discretion implies that there may be occasions, or times, or seasons, when bicycles may be used on the road.

It not infrequently happens, that statutes require particular things to be done, or not to be done. that must be made to depend upon the judgment—discretion—of a designated agent or commissioner, or officer, and the discretion in such cases is not arbitrary—it is lawful, and must be lawfully exercised.

The learned counsel for the appellant directed our attention to the case of *Yick* v. *Hopkins*, 118 U. S., 356. That case, in our judgment, has no application here. The Court declared a *city ordinance* void, upon the ground, that its manifest purpose was not a just and reasonable regulation, but unlawful, and the discretionary powers conferred upon certain authorities of the city were purely arbitrary—intentionally so—and therefore unlawful and void. And the same may be said of *Mayor and C. of Baltimore* v. *Rad- ecke*, 49 Md., 217, cited in the case above mentioned. In our case, the purpose of the statute is obviously a lawful one—a proper regulation of the use of property—and the designation of the agent, and the discretionary power conferred upon him, is for the lawful purpose of effectuating the just intent of the statute, and he is amenable, as we have indicated above.

There is no error. Let this opinion be certified to the Criminal Court of the county of New Hanover according to law. It is so ordered.

No error. Affirmed.