PAUL v. WASHINGTON.

(Filed March 8, 1904).

1. ORDINANCES—*Injunctions—Municipal Corporations.*

The validity of an ordinance cannot be tested by an injunction.

2. ORDINANCES—*Intoxicating Liquors—Police Power—The Code, sec. 3800.*

Ordinances which provide that saloons shall keep windows and doors so as not to conceal the interior; that no partitions shall be used; that no liquors shall be delivered through any window or door; that no sales shall be made between 8 o'clock p. m. and 6 o'clock a. m.; that the saloon shall be kept well lighted; that no billiard, pool or gaming table shall be kept therein, and that no restaurant or eating-house shall be kept therewith, are reasonable and therefore valid, when the charter allows the regulation or prohibition of spirituous liquors by the municipality.

3. ORDINANCES — *Intoxicating Liquors — Police Power — Trial—Licenses.*

Where a town charter allows the regulation and sale of spirituous liquors, an ordinance allowing the revocation of licenses upon the breach of certain ordinances regulating the sale, the licensee agreeing thereto upon receiving his license, is valid.

DOUGLAS, J., dissenting in part.

ACTION by Smith Paul against the city of Washington, heard by *Judge W. A. Hoke,* at Chambers, at Elizabeth City, N. C., January 23, 1904.

This is an appeal of the plaintiff from an order made by *Judge Hoke* in which he dissolved a restraining order theretofore made in the case. The plaintiff was, before January 1, 1904, and at the time this action was commenced (January 18, 1904), engaged in retailing liquor in the city of Washington, N. C., in a large two-story brick building situ-

ated at the corner of Main street and Whitecar alley. There is a front door upon Main street and a side door upon Whitecar alley, and also a door from the rear of the building into the lot upon which the building stands; and there has been and still is a cellar beneath the building with a trap-door leading to the cellar and the cellar has been used and could be used for storage purposes. Prior to January 1, 1904, the plaintiff rented out the second story of the building as a general restaurant, and a part of the time conducted the same on his own account.

On November 4, 1903, the Board of Aldermen of the city of Washington enacted and adopted (to go into effect on January 1, 1904), the following ordinances:

"1. That it shall be unlawful for any person, firm or corporation carrying on the business of selling spirituous, vinous or malt liquors in Washington, or for any agent, servant or employee of such person, firm or corporation, to have, use, permit or allow in their saloon, salesroom or place of business, any storm doors, partitions, screens, blinds, stained glass, or any contrivance which shall in any manner obstruct the view of the interior of his or their saloon, salesroom or place of business or any part thereof, or which shall in any manner conceal or cut off any view of any person or persons in such saloon, salesroom or place of business from and through the front door and windows thereof. All front doors shall be glass panneled, one glass to the shutter, the bottom of said panel shall not be more than four feet in height from the level of the sidewalk; the bottom of glass in all front windows shall not be more than four feet in height from the level of the sidewalk; all glass in front windows and front doors shall be kept clean of dirt, specks or anything that will dim or obstruct the view of the interior of such saloon, salesroom or place of business. No counters shall extend more than fifty feet from the front door or doors of said saloon or

saloons.   All liquor shall be served at the counter, and all liquors drunk in said saloon or saloons shall be drunk at the said counter or counters; and any person violating this ordinance shall, upon conviction thereof, be fined fifty dollars. Each and every day upon which a violation of this section shall be committed or continued shall constitute a separate offense.

"2. That it shall be unlawful for any person, firm or corporation carrying on the business of selling spirituous, vinous or malt liquors in Washington, or for any agent, servant or employee of such person, firm or corporation, to use, permit or allow any side door or rear door, trap-doors, elevators or stairways for entrance to or exit from his or their saloon, salesroom or place of business by side or rear door or place of entrance or exit; nor shall any spirituous, vinous or malt liquors be sold or delivered through any window or other opening, and any person violating this ordinance shall, upon conviction thereof, be fined fifty dollars. Each and every day upon which a violation of this section shall be committed or continued shall constitute a separate offense; provided nothing herein contained shall prevent the use of such back or side doors by the person or persons carrying on said business, his or their agents, servants or employees, for purposes other than the sale or delivery of liquors.

"3. That it shall be unlawful for any person, firm or corporation to whom shall be granted a license to sell spirituous, vinous or malt liquors by the Board of Aldermen of Washington, or for any agent, servant or employee of such person, firm or corporation, to sell, give away or in any manner part with directly or indirectly any liquor or drinks in his or their saloon, salesroom or place of business between the hours of eight o'clock in the evening and six o'clock in the morning, or permit or allow the doors of his or their saloon, salesroom or place of business to be opened or remain open between

said hours; and every person violating this ordinance shall, upon conviction thereof, be fined fifty dollars. Each and every day upon which a violation of this section shall be committed or continued shall constitute a separate offense.

"4. That in every saloon or room where the business of selling spirituous, vinous or malt liquors shall be carried on under a license from the Board of Aldermen of Washington, the person, firm or corporation, holding such license shall keep burning throughout the period of darkness, each and every night, a gas or electric light of such brightness that objects in the rear of said room may be plainly seen; and no such room shall be entered, opened, kept open or occupied by any person whomsoever between the hours of closing on Saturday night at eight o'clock and the hours for opening on the next Monday morning at six o'clock. Any person, firm or corporation, or his or their servant, agent or employee who shall violate this ordinance shall, upon conviction thereof, be fined fifty dollars.

"5. That it shall be unlawful for any person, firm or corporation carrying on the business of selling spirituous, vinous or malt liquors in Washington, or for any agent, servant or employee of such person, firm or corporation, to have, use, permit or allow in his or their saloon, salesroom or place of business, or in any room connected therewith, any billiard table or pool table, ten-pin alleys, gaming tables or any games or gaming devices whatsoever, whether the same be played or used or played for amusement and exercise or for anything of value, and it shall also be unlawful to have, use, permit or allow in his or their saloon, salesroom or place of business or in any room connected therewith, any restaurant, eating-house, room or table, or any means or contrivance whatever for providing, supplying or furnishing food, whether the same is to be provided, supplied or furnished for giving away or for selling to customers, and it shall be

PAUL *v.* WASHINGTON.

unlawful to permit or allow in his or their saloon, salesroom or place of business, obscene pictures, the printing to be exposed to view on the walls thereof or elsewhere in the room. Any person, firm or corporation, his or their agents, servants or employees who shall violate this section shall, upon conviction, be fined fifty dollars.

"6. No saloon shall be conducted, nor shall any spirituous, vinous or malt liquors be sold or disposed of in any building in which there is a restaurant, eating-house, room, table, or any means or contrivance whatever for providing, supplying or furnishing food, whether the same be provided, supplied or furnished free or for pay; provided, this shall not apply where the saloon or place wherein liquor is disposed of and the room or place where food is furnished or supplied shall be separated by one or more solid, upright, perpendicular walls, with no doors, nor openings of any kind therein. Any person, firm or corporation, his or their agents, servants or employees, who shall violate this section shall, upon conviction, be fined fifty dollars.

"7. That any and all licenses hereafter granted by the Board of Aldermen of Washington for the sale of liquors shall be issued by the said board and accepted by the applicant therefor upon the express condition that a violation of any of the foregoing provisions of any statute or ordinance regulating the sale of liquors in or at the saloon, salesroom or place of business for which the license has been granted shall work a forfeiture of said license, and that the said Board of Aldermen, upon satisfactory evidence of such violation, shall have the power of declaring such license revoked, and such condition shall be incorporated in the license when granted. Upon complaint made to the mayor that any person, company or firm has violated any of the said ordinances or statutes, he shall forthwith summon such person, company or firm to appear before the Board of Aldermen at a given

time, not less than three days' notice being given, to show cause why such license should not be revoked."

On January 2, 1904, the ordinances being in full force, a license to retail liquor was granted to the plaintiff by the Board of Aldermen upon a condition inserted in the license that a violation of any of the ordinances should work a forfeiture of the license.

*Charles F. Warren*, for the plaintiff.
*Bragaw & Ward*, for the defendant.

MONTGOMERY, J., after stating the facts. The plaintiff commenced this action for relief by injunction, his object being to avail himself of the benefits of his license and at the same time to restrain and enjoin the defendant from enforcing the ordinances, on the ground that they were oppressive, vexatious and unreasonable. He is met *in limine* by the contention on the part of the defendants that he cannot try the validity of an ordinance of a municipal corporation by injunction, and that he can have no relief in equity because he can have full relief in a court of law if the ordinance be unlawful. The cases of *Cohen v. Comrs.*, 77 N. C., 2; *Wardens v. Washington*, 109 N. C., 21; *Scott v. Smith*, 121 N. C., 94, were cited in the argument of the defendant's counsel here in support of the contention.

In answer to that position the counsel of the appellant, while questioning the correctness of the law of those cases, yet insists that the facts there can be distinguished from those in the present case; that the reason assigned in those cases by the Court for denying redress, in equity, is that the plaintiff could have complete redress in an action at law for damages; that the Court certainly could not have meant that damages could be recovered against the municipal corporations, for the reason that municipal corporations

PAUL *v.* WASHINGTON.

are not liable for torts in the nature of trespass committed by their officers (policemen) when they undertake to enforce unconstitutional and void ordinances enacted in the attempted exercise of police powers or public or governmental functions; nor could it have intended to say that damages could be recovered against the members of the boards of aldermen of cities and towns, individually or personally; for municipal officers who enact ordinances under a claim of power from the legislative branch of the government are vested with the immunities and privileges of government, and consequently are exempt from liability if they have made a mistaken use of their powers, and that the Court must have meant, therefore, that the policemen who actually made the arrests under an unconstitutional municipal ordinance are liable in damages to the person aggrieved. And the counsel of the appellant further insisted that, as in the present case the policemen are and were insolvent, and on that account a recovery against them would be worthless and afford no redress to the appellant for injuries he may have sustained if the ordinances are void, the case was easily to be distinguished from *Cohen v. Commissioners, supra,* and the other similar cases mentioned, where it did not appear that the officers making the arrests were insolvent.

The counsel further contended that the suggestion made in *Wardens v. Washington, supra,* that one who doubts the validity of a municipal ordinance might raise the question by a defense of himself when he might be arraigned upon a criminal charge for an alleged violation of a town ordinance, places the complainant at a disadvantage; that it would be a hard law to compel a citizen who has no redress in the way of damages against the municipal corporation or its aldermen personally, or from the constable or policeman (on account of his insolvency) who makes an arrest under an

134——24

unlawful ordinance, to compel him to violate the law (the ordinance) at his peril in order to test its validity.

The writer of this opinion is in sympathy with the argument of the counsel of the appellant, but the majority of the Court are of the opinion that the law as laid down in the cases above cited is correct in principle and applies to the facts of this case, and to all others in which the attempt may be made to test the validity of a municipal ordinance by injunction. That view of the case by the Court will relieve us of the consideration of the question of the alleged unlawfulness of the ordinance, but as a decision upon that branch of the case would be of so much importance to the public, we will now take up that question for discussion and decision.

No question can be raised in this case as to the power of the Board of Aldermen to pass reasonable ordinances to restrict and regulate the liquor traffic in Washington, and even to prohibit it if they see fit to do so. In section 18 of chapter 170, Private Laws of 1903, entitled "An Act to incorporate the city of Washington," it is enacted "that among the powers conferred on the Board of Aldermen are these: They may * * * regulate, control, tax, license or prevent the establishment of junk and pawn shops, their keepers or brokers, and the sale of spirituous, vinous or malt liquors; * * provide for the proper observance of the Sabbath, and the preservation of the peace, order and tranquility of the city." It was argued in this Court for the defendant that as the Board of Aldermen were given the power to prevent the sale of intoxicating liquors within the city limits, therefore, under the maxim that "the greater includes the less," ordinances regulating and restricting the traffic, if the aldermen should see fit not to prevent but to license, whether reasonable or unreasonable, were matters in their discretion and not reviewable by the Courts. We think that that is not a proper view of the powers of the alder-

men or of the rights of those who may be licensed to sell liquor by the board. They, as we have said, had the right to prevent or prohibit entirely the sale of liquor. They had also the power to license the traffic and to regulate it, and having adopted as a choice the plan of licensing and then regulating, it must follow that regulations and restrictions must be such as are reasonable, and their reasonableness must be, in case of contest, finally decided by the courts. *State v. Taft,* 118 N. C., 1190, 32 L. R. A., 122, 54 Am. St. Rep., 768; *State v. Yopp,* 97 N. C., 477, 2 Am. St. Rep., 305.

In the consideration of the reasonableness of these ordinances, it must be understood that they are to be discussed from the point of view of our State legislation on the subject of the liquor traffic and the decisions of our courts upon that legislation. The restrictions and limitations with which the legislative branch of our government for many years past, at the demand of a strong and aggressive sentiment, individual and public, against the evils of intemperance have environed this traffic, and the firm support of this legislation by the courts afford unmistakable evidence that the traffic is dangerous to society in its moral effects, and injurious to the material welfare of the Commonwealth. The police power, directly through the Legislature and indirectly through municipal corporations, is being more and more exercised in the regulation and suppression of the sale of liquor on the theory that it is evil in its nature, until such legislation has grown into a system of temperance legislation. Each encroachment, however, has been stubbornly resisted by those engaged in the trade. This Court has in no uncertain language approved of the legislation on this subject. In *Bailey v. Raleigh,* 130 N. C., 209, 58 L. R. A., 178, the Court said, referring to the restrictions in the Prohibition Act for Raleigh: "This is done under the exer-

cise of the police power, owing to the evil tendency of the business"; and in *State v. Ray,* 131 N. C., 814, 60 L. R. A., 634, 92 Am. St. Rep., 795, "liquor itself is regarded as an evil, an enemy of civilization and good government."

From the standpoint of the statute law on the subject and the decisions of the Court, the rule with reference to what the law would regard as undue restrictions upon a useful business cannot be the same as that applicable to the liquor traffic. What would be a deprivation of the use of property without due process of law, or an infringement of personal liberty against one engaged in a useful trade, would not be such when considered in connection with the property or person with one engaged in the sale of intoxicating liquors, as is pointed out in *State v. Ray, supra,* where the Court said: "It must be understood that they (saloons) stand on a very different footing to the sale of dry goods and family groceries. Liquor itself is regarded as an evil, an enemy of civilization and good government. Its sale without a license is condemned and prohibited by law, and the regulations closing at certain hours such shops might well be put upon the implied power as being for the public good."

In looking at the ordinances as a whole, it is readily seen that the aldermen in enacting them had in view the purpose to cause the licensee to give publicness to whatever might go on inside of the place in which liquors might be sold instead of allowing secrecy about the matter; to break up, as far as possible, loafing and loitering in saloons; to prohibit the young or those who might not be permitted to enter the front doors to come in by means of side and rear doors in a clandestine manner, or to get liquor from rear and side doors, or to do indirectly the same thing by means of having eating-houses connected with the drinking places; to take from the saloons enticements and allurements which have a tendency to attract the senses and develop and foster

the susceptibility of vice and immorality; to close the saloon at hours when general work is over for the day, to the end that the inexperienced, the young and impressionable and the unfortunate of those who have been at work in useful occupations may not be induced to spend their evenings and their money in the barroom; and to have lights kept burning and doors closed during prohibited hours, that the officials may more easily preserve the public peace and order, and that the public may know that the laws in respect to the retailing of intoxicating liquors are being obeyed.

In respect to the first ordinance, it is insisted for the plaintiff that that part forbidding the use of partitions was not only enacted without authority and is unreasonable, but that it is positively mischievous in that it prevents the separation of the white and negro races while they are drinking in the saloon. The law has no requirement for race separation in barrooms, and if their keepers think it necessary to make the separation there is really nothing in the ordinance that prevents them from so doing. The partition can be run from the front toward the counter, and one side can be allotted to one race and the other to the other, and the ordinance will not be violated; for it only provides that the partitions or screens shall not "conceal or cut off any view of any person or persons in such saloon, salesroom or place of business, from and through the front doors and windows thereof." We have no decisions of this Court on the subject of the power of municipal corporations, or even of the General Assembly, to prohibit the use in saloons of storm doors, screens, stained glass or any contrivances which obstruct the view of the interior of saloons, or as to what kind of doors and windows, whether of glass or of other material, shall be used; but the decisions from other States fully sustain the requirements of the first ordinance in all these

respects, and we are of the opinion that the ordinance is a reasonable one.

We think further that that part of the ordinance which requires that all liquors shall be served at the counter and shall be drunk at the counter is also a reasonable requirement, being calculated to prevent loafing and loitering, and also to diminish the quantity that might be drunk. Drinking to excess would certainly be more apt to take place where guests could be seated around tables or on lounges with other attractions that might be offered.

In regard to the second ordinance, the contention of the plaintiff is that it is "arbitrary, oppressive, vexatious, unreasonable and void," in that it deprives the plaintiff of the use and convenience of his property without due process of law. By that ordinance saloon-keepers and their servants and employees are not permitted to use any side or rear doors, or trap-doors, elevators or stairways for the purpose of selling or delivering liquor through such communications, but the ordinance does not prohibit the use of such entrances and exits for any other purposes than the sale and delivery of liquors. That certainly is a restriction upon the plaintiff's property, but in our opinion it is not an unreasonable restriction; certainly not one so unreasonable as to warrant us to declare it void. As was said in the case of *State v. Yopp,* 97 N. C., 477, "Such statutes (police regulations) are valid unless the purpose or necessary effect is not to regulate the use of property but to destroy it. As we have said, it is the province of the Legislature to decide upon the wisdom and expediency of such regulations and restraints, and the courts cannot declare them void or interfere with their operations unless they are so manifestly unjust and unreasonable as to destroy the lawful use of property, and hence are not within the proper exercise of the police power of the government. Courts cannot regulate

the exercise of this power—they can only declare the invalidity of statutes that transcend its limits. The exercise of this power does not extend to the destruction of property under the form of regulating the use of it, unless in cases where the property or the use of it constitutes a nuisance." The plaintiff's property is not destroyed by this ordinance. It is true the regulations concerning its use by the aldermen are stringent, but we cannot say they are too much so, when the purposes for which the building is being used are taken into consideration. The Board of Aldermen have said that that part of the plaintiff's building which he uses for the sale of liquor is a suitable place and sufficient for that purpose, and that the use of the forbidden parts of that building in connection with the sale of liquor are not necessary and would prevent, if so used, the proper regulation of the sale of spirituous liquors. We have no doubt that the defendants, under the power given in the charter, had a right to confine the sale of liquor to a particular room in that building, and to prohibit the use of side and rear doors, trap-doors, elevators and stairways leading to and out of that room for the purposes of selling or delivering liquors.

It is contended that the third ordinance is unlawful for the reason that it prohibits the selling or giving away liquors between the hours of eight o'clock in the evening and six o'clock in the morning, and also that it prohibits the saloon-keeper or his employees to open the doors, or allow them to remain open between said hours. In *State v. Thomas,* 118 N. C., 1221, the hours prescribed by the ordinance were ten o'clock p. m. and four o'clock a. m., and there was no question made in that case on the reasonableness of such hours. It seems to us that the hours of closing and opening in the case before us are not unreasonable. For a few months in the year there might be, in the mornings, a

couple of hours of daylight in which the retailing of liquor might be carried on, but it does seem that those hours— hours in which the greater number in each community is engaged in preparing for the day's duties and living—might be spent in some useful way without injury to the saloon- keeper. He would then have nearly fourteen hours in which to supply the demand for his wares. That ought to be ample time for all legitimate needs and necessities.

So far as the requirement in the fourth ordinance, that places for the retailing of liquor shall be kept reasonably lighted, it seems to us there can be no just objection, for, on its face, it seems a very fair and proper police regulation; but in respect to that requirement which makes it unlawful for the owners of saloons to enter their buildings between the hours of closing on Saturday night at eight o'clock and the hour for opening next Monday morning at six o'clock, we have some doubt. In the case of *State v. Thomas,* 118 N. C., 1221, the charge was that the defendant remained in his barroom after the hour prescribed for closing. In that case the ordinance made "it unlawful for any bar- keeper, clerk or agent or any person whatsoever to keep open or be or remain in a barroom or other place where spiritu- ous or intoxicating liquors are sold between ten o'clock p. m. and four o'clock a. m. The Court there held that the charter of Marion did not empower the town to pass the ordinance, and that under the general law, The Code, sec- tion 3800, the power did not exist to pass the ordinance. Under the charter of the city of Washington the Board of Aldermen, as we have seen, had the power either to pro- hibit the sale of liquor or to regulate and control its sale, and the only question is whether this part of the fourth ordinance, preventing the owners of saloons from entering their saloons during Sundays, is reasonable. As we have said, we have our doubts about this matter, but as that part

of the ordinance is not clearly unreasonable, and remembering that the Board of Aldermen have full opportunity to judge of such a necessity, we do not feel called upon to set aside their judgment by declaring the ordinance invalid on the ground that it is unreasonable. We cannot see that the objections to the fifth ordinance are reasonable objections. Billiard tables, pool tables, gaming tables, ten-pin alleys, and other gaming devices, whether played for amusement and exercise or for anything of value, are such attractions as ought not to be used in saloons where liquor is sold. They entice and allure men into the temptation to drink, and encourage loafing and lounging. It is true that in the Revenue Laws of 1903 a tax is levied on billiard and pool tables and bowling alleys connected with any place where liquor is sold or allowed to be drunk, whether kept under the same roof or not, but it does not follow from this that it is not in the power of a municipal government that is authorized by its charter to prohibit the sale of liquor, or to license its sale and then regulate it and declare that billiard and pool tables shall not be used in connection with barrooms. It is only where they are not prohibited from being used by the lawful authority that they can be taxed. Under the fifth ordinance there is no prohibition against the use of restaurants or eating-houses, rooms or tables for providing or furnishing food, being kept in the same building in which liquor is sold, but the prohibition is against having such restaurants or eating-houses connected with the barroom. We cannot say that that prohibition is unreasonable. The sixth ordinance enacts that no place where spirituous, malt or vinous liquors are sold or disposed of shall be in any building in which there is a restaurant, eating-house, room or any means or contrivance for providing or furnishing food, unless the two places shall be separated by one or more solid upright perpendicular walls with no

doors nor openings of any kind therein. That seems to us a very proper regulation. Such a condition of affairs we can see would be most conclusive to the bringing together of elements of society whose conduct in many instances would tend to produce disorder. We may take judicial notice of a fact so well known, that these joint eating-houses and drinking saloons afford opportunities for carousals and lawlessness, and are sore spots in many communities.

It is provided in the seventh ordinance that in case of a violation of any of the ordinances of the town regulating the sale of liquor by one licensed to sell liquor, the Board of Aldermen may have the power to investigate the matter and to revoke the license in case it should be found that the ordinance had been violated. We see no objection to the ordinance as applicable to this case, especially as the plaintiff in this case had agreed to that method of trial. But if that ordinance was invalid, yet the others would not be affected, and the plaintiff or any licensee of the Board of Aldermen of Washington might be made to pay the fines mentioned in the ordinances by the proper tribunal, upon its being made to appear that the ordinance had been violated.

Chapter 233 of the Acts of 1903 has no application to the city of Washington, for, as we have seen, the charter of that city confers on the aldermen the power to regulate or to prevent the sale of intoxicating liquors, and section 19 of chapter 233 of the Laws of 1903 particularly declares the purpose of the act to be not to interfere with such municipalities or territories as are given the power to regulate or to prohibit the sale of intoxicating liquors.

No Error.

PAUL *v.* WASHINGTON.

WALKER, J., concurring.  This action was brought to enjoin the defendant from enforcing certain ordinances regulating the liquor traffic within its corporate limits, and from revoking and cancelling the plaintiff's license to sell liquor, and to declare the said ordinances null and void upon the ground that they impose unreasonable, vexatious and oppressive restrictions upon the business of selling liquors by those who are licensed to do so by the town authorities. The motion for the injunction was denied and the plaintiff appealed.  It is sufficient, I think, for the purpose of deciding the case in the view I take of it, to state that it is provided by the several ordinances in question that the business of retailing liquors shall be conducted under certain rules and regulations specified in the ordinances, and that a failure to comply with the said rules and regulations or the violation of any of the ordinances subjects the offender, upon conviction, to a fine of fifty dollars for each day on which a violation occurs.  It is not necessary to set forth the terms of the several ordinances more particularly than I have done, as the Court, in my opinion, is not at liberty to consider the general question of their validity, because of an objection of the defendant *in limine,* which is fatal to the plaintiff's action, namely, that if we concede for the sake of the argument the ordinances are invalid, the plaintiff is not, upon the facts stated in his affidavit, entitled to any relief by injunction.

The plaintiff, upon affidavit, obtained a restraining order and an order to show cause why an injunction to the hearing should not be issued, and on the return day of the order the motion for a continuance of the injunction was heard upon the affidavits, as is stated in the order, no complaint having been filed, though it is recited in the original restraining order that it was granted upon the complaint and affidavits.  Regularly the motion to continue the injunction

PAUL *v.* WASHINGTON.

should not have been heard until the complaint was filed, and it may be that the law contemplates in a case like this one that the complaint shall be filed in the beginning, so that the Court may see clearly and distinctly that the plaintiff is entitled to the relief demanded, "where it consists in restraining the commission or continuance of an act" (The Code,, section 338); but however this may be, it would seem to be good practice to require the complaint to be filed when the motion to continue is heard, for it is the allegations of the complaint, and not of affidavits merely, that ascertain and determine what is the cause of action out of which arises the right or equity that requires protection pending the litigation. But I will consider the case without reference to the question of pleading and practice, as I desire to state my views upon the legal merits involved.

There are two objections to the plaintiff's right to maintain this action, *first,* the courts cannot enjoin the enforcement of the criminal law or of municipal ordinances imposing fines or penalties, and *second,* the defendant, under its charter, had the power "to prevent, control, tax, license or regulate the sale of spirituous, vinous or malt liquors," and the defendant having applied for and accepted his license with full knowledge of the terms of the ordinances is not in a position to question their validity, but must exercise the right and privilege of selling conferred by that license in strict compliance with the conditions and restrictions imposed.

In regard to the first objection, we must bear in mind that if the Court should issue an injunction against the institution of a criminal prosecution, it would not only interfere with the due administration of the criminal law, which is of the first importance in any well-ordered system of government, but it would have to restrain action by the State in whose sovereign name and capacity all criminal

cases are commenced and prosecuted, and the State is not even a party to this action and her rights cannot be prejudiced without notice and a hearing, even if we could entertain for a moment with any seriousness the proposition that a court of equity can interfere by injunction with the administration of the criminal law. The violation of a town ordinance is made by statute a misdemeanor. The Code, section 3820. If it is contended that the ordinance imposes a penalty for each violation of it, and that a court of equity will interfere on behalf of the plaintiff to prevent vexatious litigation and a multiplicity of suits, one answer, and a conclusive one, is that a court of equity will never assume jurisdiction in such a case until the right of the complaining party or, in this particular case, the validity of the ordinance has been first determined in an action at law.

The true principle governing such a case is well stated in *Wallace v. Society,* 67 N. Y., 28: "The general rule is that the Court will not restrain a prosecution at law when the question is the same at law and in equity. An exception exists where an injunction is necessary to protect a defendant from oppressive and vexatious litigation. But the Court acts in such cases by granting an injunction only after the controverted right has been determined in favor of the defendant in a previous action. On this ground the Chancellor in *West v. Mayor,* 10 Paige, 539, dissolved a temporary injunction restraining the defendant from prosecuting suits against the complainant for violation of a corporation ordinance claimed to be invalid. The unconstitutionality of the Act of 1872 would be a perfect defense to a prosecution for the penalties given by it, and the question as to the constitutionality of the act has not been determined. It would doubtless be convenient for the plaintiff to have the judgment of the Court upon the constitutionality of the act before subjecting himself to liability

for accumulated penalties.  But this is not a ground for
equitable interference, and to make it a ground of juris-
diction in such cases would, in the general result, encourage
rather than restrain litigation."  Further, the Court thus
states the law: "The question as to the validity of a cor-
poration ordinance does not properly belong to this Court
for decision, where the complainants, as in this case, have
a perfect defense at law if the ordinances are invalid, or
if they do not render the complainants, or those in their
employ, liable for the penalty.  And it would be an usur-
pation of jurisdiction by this Court if it should draw to
itself the settlement of such questions when their decision
was not necessary in the discharge of the legitimate duties
of the Court.  *  *  *  This Court would not grant an
injunction to protect him against the multiplicity of suits
until his right to such protection had been established by
a successful defense at law in some of the suits."  In 16
Enc. of Law, p. 370, we find the following succinct state-
ment of the principle: "It is a well-settled rule, both in
England and America, that a court of equity has no juris-
diction to interfere by injunction to restrain a criminal
prosecution, whether the prosecution be for violation of
statutes or for an infraction of municipal ordinances.  The
rule applies whether the prosecution is by indictment or by
summary process, and to the prosecutions which are merely
threatened  or  anticipated, as well as those which have
already been commenced.  So it is not within the power of
the parties to waive the question relating to the jurisdiction
of the Court and to compel it to try the cause.  If the
prosecution is under an ordinance, no ground for enjoin-
ing it is constituted by the fact that the ordinance is void
or that the party seeking the injunction has not committed
a violation of the ordinance, or that the complainant in the
prosecution under the ordinance states no cause of action."

In *Burnett v. Craig,* 30 Ala., 138, the plaintiff sought to
enjoin the enforcement of an ordinance against the sale of
liquor, and the Court said: "We have found no case, how-
ever, where chancery has restrained a simple trespass or
succession of trespasses on either the person or personal
goods. The utmost extension of the principle which has
come under our observation embraces only trespasses to
realty, where the remedial agency is shown to be neces-
sary to prevent multiplicity of suits or to avert irreparable
mischief. * * * The judgment and sentences of the town
council, of which the appellant complains, were *quasi* crimi-
nal proceedings. A bill in chancery to restrain a malicious
or unfounded prosecution is certainly of novel impression.
* * * We have not been able to find any principle or ad-
judged case which justifies an injunction to stay a prose-
cution, either criminal or *quasi criminal,* or to restrain a
trespass to the person or personal property. We think
such a precedent would be an alarming stretch of equity
jurisdiction. In considering this case, simply on the equity
of the bill, we have necessarily regarded its averments as
true. It is not intended by this to intimate an opinion on
the validity or invalidity of the ordinance or of the fines
imposed on the appellant; they will be considered when
properly presented." In *Moses v. Mayor,* 52 Ala., 198, it
is said: "Courts of equity will not interfere to stay pro-
ceedings in criminal matters, or in any cases not strictly of
a civil nature. They will not grant an injunction to stay
proceedings on a mandamus, or an indictment, or an in-
formation, or a writ of prohibition. The courts of law
have complete jurisdiction to punish the commission of
crimes, and can interpose to prevent their commission by
imprisoning the offender or binding him to keep the peace.
But courts of equity have no jurisdiction over such matters;
at least a court of equity cannot entertain a bill on this

ground alone. * * * A bill in chancery to restrain
a malicious or unfounded prosecution is certainly of novel
impression, and there is neither principle nor authority to
support it. * * * Municipal authorities would be par-
alyzed in discharging the public duties entrusted to them
if every offender against the ordinances they have pro-
claimed could by injunction arrest them, or could by mul-
tiplying his offenses invoke the inference of a court of
equity. * * * The counsel for the appellant have sought
to withdraw the case presented in the bill from the opera-
tion of this general principle and the authorities by which
it is supported, upon the ground that the interference of a
court of equity is necessary in this case for the prevention of
vexatious litigation and of a multiplicity of suits. It could
well be said in answer, the litigation and multiplicity of
suits apprehended are criminal in their character and with-
out the jurisdiction of the Court." And to the same effect
are the following authorities: *Devron v. First Municipality,*
4 La. Ann., 11; Beach on Injunction, sec. 520; *Eldridge
v. Hill,* 2 Johns. Ch., 281; *Field v. Western Springs,* 181
Ill., 186; 1 Spelling Inj. & Extr. Rem., sec. 694. In
*Burch v. Cavanagh,* 12 Abb. Pr. Rep., 410, it was held that
an injunction will not lie to restrain an illegal arrest, and
that several persons who were threatened with arrest could
not unite in the same action to prevent it; and further,
that the insolvency of a person who threatens to make the
arrest cannot be ground for an injunction to restrain him.
The case of *Hottinger v. New Orleans,* 42 La. Ann., 629,
in its essential facts, is very much like the case at bar. The
plaintiff alleged that the defendant, by the attempted en-
forcement of an illegal and void municipal ordinance, was .
interfering with her dairy business, and by its unauthorized
acts was injuring her property and impairing the value
thereof. The Court, after stating that as a court of equity

it had no power by injunction to prevent a municipal corporation from enforcing penal ordinances in the interest of
public order and health, said: "The ordinance was enacted
in pursuance of the police power vested in the city, whether
rightfully or wrongfully is not to be determined in this
suit.    It was a police regulation in the interest of public
health, with a penalty for its violation.    The pecuniary loss
in the enforcement of the ordinance cannot therefore be considered in determining the question of jurisdiction.    The
enforcement of the ordinance vested by the Constitution and
law of the State upon the Recorder's Court of the city of
New Orleans.    If the ordinance is unconstitutional, as
alleged, the plaintiff can suffer no injury, as she has her
remedy and can urge her defense in the Recorder's Court.
Failing there, she has her remedy by appeal to this Court."
In *Cohen v. Commissioners,* 77 N. C., 3, this Court said:
"If the defendants have an unlawful ordinance, and have
arrested and fined the plaintiffs, as they allege, the plaintiffs have complete redress in an action for damages.    And
as often as the arrest may be repeated they have the like
redress; but we are aware of no principle or precedent for
the interposition of a court of equity in such cases."    The
principle has been expressly affirmed in *Wardens v. Washington,* 109 N. C., 21; *Scott v. Smith,* 121 N. C., 94, and
recognized and applied in *Vickers v. Durham,* 132 N. C.,
880; *Busbee v. Lewis,* 85 N. C., 332; *Busbee v. Macy,*
85 N. C., 329, and *Pearson v. Boyden,* 86 N. C., 585.
While, as we have said, the fact that the police officers of
the town are insolvent does not take this case out of the
general rule, it may be added that process can be issued by
the mayor, who is made by statute a magistrate and custodian of the peace, with a jurisdiction of a justice of the
peace, to any lawful officer, such as a sheriff, town constable,
etc.    The Code, sections 2079, 3808, 3811 and 3818; *State*

*v. Cainan,* 94 N. C., 880, and the execution of such process is not confined to the policemen of the town.   But if an injunction is the proper remedy, the plaintiff must fail in this suit, as his case presents no equity to be protected by the restraining process of the Court.   The ordinances in question were adopted by the defendant before the plaintiff applied for and obtained his license to retail liquor, and he knew of their existence and accepted the license subject to the conditions and regulations imposed by them.   Under these circumstances, what moral or legal right has he to question their validity?   The Legislature may prohibit or restrict the sale of liquor in any manner its wisdom or discretion may dictate, and no one has any natural or absolute right to sell liquor.   If he sells at all it must be on such terms as the law may impose.   The law in this respect is thus stated in *Crowley v. Christinsen,* 137 U. S., 91: "The police power of the State is fully competent to regulate the business, to mitigate its evils, or to suppress it entirely.   There is no inherent right in a citizen to thus sell intoxicating liquor by retail; it is not a privilege of a citizen of the State or of a citizen of the United States.   As it is a business attended with danger to the community, it may, as already said, be entirely prohibited or be permitted under such conditions as will limit to the utmost its evils.   The manner and extent of regulation rest in the discretion of the governing authorities."   The same doctrine is thus stated by this Court in *Bailey v. Raleigh,* 130 N. C., 214, as follows: "It (the Legislature) had the right to have absolutely prohibited the intestate, or any one  else, from selling liquor within one mile of the corporate limits of the city.   *This it did unless* the party selling obtained a license or permission to do so from the city authorities.   Instead of this right to do so with the permission of the city authorities being a restriction, its effect was to relax the prohibi-

tory rule and to grant him a right he did not otherwise have. The law allowing him to get a license from the city took nothing from him and imposed no duty upon him; it only gave him an *option,* a right to take the license and pay the tax, or not.  How he was damaged by having this privilege, this option, which he chose to accept, we are unable to see." When, therefore, the law conferred upon the defendant the power to "prevent, regulate, control, tax or license the sale of spirituous, vinous and malt liquors," as they had the power to prevent or, what is the same thing, to prohibit the sale, this necessarily implied that they could grant license upon any terms or conditions they saw fit, in the exercise of their judgment or discretion, to impose or to annex to the grant.  "A grant of entire control, or of power to suppress and restrain, would enable the corporation to adopt any mode of regulation within the limit of those powers, license included."  Horr and Bemis Mun. Pol. Ord., p. 250. "Regulating a thing is the prohibition of it, except in accordance with certain rules.  This act prohibits the sale and manufacture of intoxicating liquor, except under certain regulations therein provided."  *Cantine v. Tillman,* 54 Fed. Rep., 975.

I confess my inability to understand how a person, who, upon his own application, has received a license in which is stated that it was issued "subject to all ordinances of the city of Washington now in force and hereafter enacted, and upon the condition that a violation of any ordinance of the city shall work a forfeiture of said license," can continue to enjoy the right and privilege conferred by the license and repudiate the conditions upon which it was granted.  He must take the burden with the benefit or privilege he has sought and accepted.  If the plaintiff is about to suffer any injury to his property, it is one which he has voluntarily and deliberately brought upon himself by accepting a license

PAUL *v.* WASHINGTON.

so worded, and he has no good reason to complain.  He is
the author of his own misfortunes, if any are about to over-
take him, and I am not aware of any principle of law or
morals upon which he can justly appeal to a court of equity
for relief.

Having concluded that the Court has no jurisdiction to
grant the relief demanded, it is unnecessary to consider the
question argued by counsel as to the reasonableness and
validity of the ordinances.  That matter is not before the
Court, and anything I might say would be the expression
of my individual opinion upon an abstract and hypothetical
question.  I agree with the majority of the Court that the
ruling below by which the injunction was dissolved was
right.

CLARK, C. J., and CONNOR, J., concur with WALKER, J.,
that an injunction does not lie against the enforcement of
a municipal ordinance the violation of which is a misde-
meanor, for the reason that the State cannot be enjoined
from the execution of its criminal laws, and concurs with
MONTGOMERY, J., that the ordinances are not void.

DOUGLAS, J., dissenting in part.  With the utmost re-
spect, I am constrained to express the difficulty I have had
in arriving at the real opinion of the Court.  Having held
that the action would not lie, it seems to me that there the
opinion of the Court ended, and that all that is said in the
numerous opinions as to what might have been the law, if
there were any question of law before us, is *obiter dicta.*
Still, as it is the opinion of the Court, and as the judgment
of the Court is that there is "no error," I must take things
as I find them, regardless of their legal relation.  I am
inclined to think that the weight of authority is against the
right of the plaintiff to injunctive relief.  This, in my

opinion, ends the case, and my only excuse for proceeding
further is that I am following the Court. We are now in
the last hours of the term, and it is impossible to write this
opinion, which has been delayed for various reasons, with the
fullness and care that I would desire. Many of the ordi-
nances are reasonable, while others are utterly indefensible.
No ordinances should go beyond a reasonable regulation of
the traffic, remembering always its dangerous character.
But we must also remember that it is not an unlawful busi-
ness as long as the State sees fit to license it, and that when
the people vote for license they are entitled to have their
will carried out in good faith by their public servants.
When a man accepts a public office he should give to all
classes of men the equal protection of the law, no matter
what may be his personal convictions, or resign the office.
Under the pretense of regulating a business he should not
seek to destroy it. Time will permit me to cite one of the
several ordinances I deem unreasonable. It is made un-
lawful for the owner of a saloon to enter his own building
between eight o'clock on Saturday night and six o'clock on
Monday morning, a period of two nights and a day, and
yet he is required to have a bright light burning in his
saloon during the entire night. Should the light go out
during that thirty-four hours, he is liable to heavy penalties
if he fails to relight it, also liable to a heavy penalty if he
goes into his building for the purpose of lighting it. Is
this reasonable? It certainly is not law. *State v. Thomas,*
118 N. C., 1221.

Much is said in the opinion of the Court as to the moral
features of the case that may justify a personal allusion on
my part. All my life I have voted consistently and per-
sistently for temperance in whatever form it was presented,
and in the sunset of life I see no reason to change my course;
but others are entitled to the same freedom of suffrage and

opinion. I am constrained to say that I have sometimes had occasion to doubt the wisdom of my vote, and I am sure that the cause has frequently been injured by the intemperate language of some of the most zealous and brilliant of temperance advocates. My experience convinces me that extremists on either side are the evangelists of opposition.